1998-NMCA-002

952 P.2d 31

**SANTA FE SOUTHERN RAILWAY, INC., a New Mexico corporation, Petitioner/Appellant,**

v.

**BAUCIS LIMITED LIABILITY COMPANY, a New Mexico limited liability company, Respondent/Appellee.**

No. 18022.

Court of Appeals of New Mexico.

Dec. 1, 1997.

Owen C. Rouse, III, Leonard S. Katz, Rubin, Katz, Salazar, Alley & Rouse, Santa Fe, for Petitioner/Appellant.

Thomas A. Simons, IV, Michele Marks, Simons, Cuddy & Friedman, LLP, Santa Fe, for Respondent/Appellee.

## OPINION

BUSTAMANTE, Judge.

1. Santa Fe Southern Railway, Inc. (SFSR) appeals the district court's order denying its motion to strike the jury demand filed by Baucis Limited Liability Company (Baucis). The sole issue on appeal is whether NMSA 1978, § 42A–1–21 (1981) provides for a jury trial on the issues of public use and necessity. We affirm the district court, holding that, based upon the language of Section 42A–1–21 and the statute's history, the legislature intended to provide for a jury trial on the issues of public use and necessity.

*FACTS AND PROCEDURAL BACK-GROUND*

2. SFSR sought to condemn a parcel of land owned by Baucis for use as a parking lot in connection with the operation of its railroad. Although the parties initially agreed to appoint appraisers to determine the fair market value of the land, none were ever appointed. SFSR filed a Petition for Condemnation for Railroad Purposes and Request for an Order of Immediate Possession. After a hearing, the court denied SFSR's request because SFSR failed to demonstrate that immediate possession was necessary. The district court determined that a preliminary showing of public use and a need for immediate possession were required to obtain an order under NMSA 1978, § 42A–1–22 (1981). The court distinguished the preliminary showing required under Section 42A–1–22 from that required for actual condemnation under NMSA 1978, § 42A–2–1 (1981). Because no need for immediate possession

was shown, the district court did not address the issue of public use.

3. Prior to the appointment of commissioners and confirmation of the report fixing the amount of compensation, Baucis filed a demand for a jury on all issues, including the issues of public use and necessity. In conjunction with its motion for partial summary judgment on all claims and issues, other than the amount of compensation, SFSR made an oral motion to strike Baucis' jury demand. The district court granted SFSR's motion for partial summary judgment, deciding that SFSR was a domestic railroad under Section 42A–2–1, but it denied SFSR's oral motion to strike Baucis' jury demand. The district court certified the matter for interlocutory appeal, which we granted on January 17, 1997.

*DISCUSSION*

4. SFSR contends the district court erred because, while the language of Section 42A–1–21 explicitly authorizes the right to a jury in proceedings filed under the statute, this right is limited to the issue of compensation.

5. Whether a party is entitled to a jury to determine public use and necessity in an eminent domain proceeding is an issue of first impression in New Mexico. " 'There is no *right* to a jury trial ... unless that right is extended by statute or existed at common law prior to the adoption of our state Constitution.' " *Smith v. First Alamogordo Bancorp, Inc.*, 114 N.M. 340, 343, 838 P.2d 494, 497 (Ct.App.1992) (emphasis added) (quoting *Kneisley v. Lattimer–Stevens Co.*, 40 Ohio St.3d 354, 533 N.E.2d 743, 746 (1988)). Neither party disputes there was no right at common law to a jury trial in eminent domain proceedings. *See Smith*, 114 N.M. at 344, 838 P.2d at 498 (noting that although eminent domain action was considered one at law and not equity, it was not historically tried to a jury). Nor does our constitution otherwise require a jury trial here. Article II, Section 12 of the New Mexico Constitution has been interpreted "to retain the right to trial by jury as it heretofore existed in the Territory of New Mexico except in special proceedings unless express provision for jury trial was included therein." *El Paso Elec. v.*

*Real Estate Mart, Inc.,* 98 N.M. 490, 495, 650 P.2d 12, 17 (Ct.App.1982). "Eminent domain proceedings are 'special proceedings.'" *Id.* (citation omitted). Therefore, the right to a jury trial on the issues of public use and necessity depends upon the eminent domain statute.

■ 6. Baucis attempts to limit the scope of our review, arguing that the question whether the 1981 amendments to the Eminent Domain Code, NMSA §§ 42A–1–1 through 42A–1–33 (1981), (the Code) created a right to a jury trial regarding public use and necessity cannot be considered because it was not raised in SFSR's application for interlocutory appeal. Baucis contends that the only issue on appeal is whether the Code provides for a jury trial on the issues of public use and necessity. Even as framed by Baucis, the issue necessarily encompasses the question of the effect of the 1981 amendments to the Code and we therefore reject Baucis' request that we limit our review.

## A. Statutory Construction

■ 7. We begin our analysis by reviewing applicable principles of statutory construction.

When interpreting statutes, our responsibility is to search for and give effect to the intent of the legislature. We endeavor to fulfill the statute's objectives. Our understanding of legislative intent is based primarily on the language of the statute, and we will first consider and apply the plain meaning of such language. This standard is sometimes called the "plain meaning rule."

*Cummings v. X–Ray Assocs.,* 1996 NMSC 035, ¶ 44, 121 N.M. 821, 918 P.2d 1321 (citations omitted). It is rare that statutory language will be free from any ambiguity whatsoever. *Id.* ¶ 45, 121 N.M. 821, 918 P.2d 1321. But, where the language of a statute is not ambiguous, the literal meaning of the words of the statute must be applied. *Id.* In our view Section 42A–1–21 is ambiguous, but the ambiguity arises not so much from the language of the statute, as from the statute's history.

■ 8. Under the prior Eminent Domain Act, 1905 N.M. Laws, ch. 97 (former Act), later codified as NMSA 1978, §§ 42–1–1 to – 40 (repealed 1981), a party appealing the commissioners' report could expect a jury trial only on the issue of compensation. *See State ex rel. Deering v. District Court,* 54 N.M. 292, 294, 222 P.2d 609, 610 (1950) ("On appeal the only question that can be presented under the statute relates to the measure of damages."). Therefore, the question is whether the legislature intended to create the right to a jury trial on issues other than compensation when it replaced the former Act in 1981. We compare the provisions of the former Act with the Code to decipher the legislature's intent. *See Key v. Chrysler Motors Corp.,* 1996 NMSC 038, 121 N.M. 764, 768–69, 918 P.2d 350, 354–55 ("In interpreting statutes, we seek to give effect to the Legislature's intent, and in determining intent we look to the language used and consider the statute's history and background.").

9. The 1981 enactment of the Code significantly changed the provision governing the right to a jury trial. Section 42A–1–21 provides as follows:

A. Within twenty days after the filing of the petition if an appraisal has been prepared pursuant to Section 42A–1–5 NMSA 1978 or after the final confirmation of the report of the commissioners, *a party may demand trial of any issues remaining in the cause.* The cause shall be tried de novo, and unless waived, the parties shall be entitled to a trial by jury.

B. If no issues *other than compensation are raised,* the court shall render a final judgment awarding the property to the condemnor contingent upon payment of the awarded compensation to the condemnee. In all other cases, the court shall render final judgment upon decision of all contested questions of law and fact.

(Emphasis added.)

■ 10. Giving the words of the statute their ordinary and usual meaning, *State ex rel. State Highway Comm'n v. Marquez,* 67 N.M. 353, 359, 355 P.2d 287, 291 (1960), we hold that Section 42A–1–21 provides the right to a jury trial on all issues in condemnation actions brought under the Code. The

statute allows a party to "demand trial of *any issues* remaining in the cause." Section 42A–1–21(A) (emphasis added). Moreover, Section 42A–1–21(B) indicates that the legislature foresaw situations where issues "other than compensation are raised." The statute provides that if other issues are raised, the court renders final judgment after the contested issues of fact and law are decided. Section 42A–1–21(B). The issues of public use and necessity are among the "issues remaining in the cause," to which Section 42A–1–21 refers. Thus, the statute extends the right to a jury trial to issues other than compensation.

11. The structure of the Code confirms this view. SFSR filed its petition for condemnation pursuant to Section 42A–1–17. However, SFSR's authority to acquire property derives from Section 42A–2–1, which confers upon "[a]ny foreign or domestic railroad ... duly qualified and doing business in New Mexico ... the power of eminent domain for acquiring property for *public use* for the purpose of constructing ... other facilities *necessary* for the operation for [of] such ... entity." (Emphasis added.) Thus, the right to condemnation under Section 42A–2–1 is conditional on a requirement that the proposed facilities serve a public use and be necessary for the operation of the railroad.

■ 12. Although the procedural provisions of the Code do not expressly require a conclusion by the court on the issue of public use, it does require that the petition contain "a general description of the public purpose for which the property is being condemned[.]" Section 42A–1–17(B)(3). These requirements provide the condemnee an opportunity to make an issue of public use and necessity and to have a judicial determination of them. *See Threlkeld v. Third Judicial Dist. Court*, 36 N.M. 350, 354, 15 P.2d 671, 672–73 (1932) (applying the same analysis under the former Act to show that despite lack of procedural statutes requiring a showing of public use or a conclusion by the court on that issue, provisions requiring condemnor to set forth in petition the location of the lines to be built impliedly provides for the opportunity to have a judicial determination

of public use.). We agree with the Supreme Court in *Threlkeld*, although decided under the former Act, "that the Legislature has in no case made a positive declaration of public use, and that in all cases ... the court should be persuaded that the taking is for a public use." *Id.* Thus, the condemnor's right to take a condemnee's land must be shown, at least initially, by a petition demonstrating public use. *See id.*

13. Moreover, after a petition of condemnation is filed, or if the parties have not agreed on a panel of appraisers, the court is required to appoint commissioners to assess the damages the condemnee may sustain as a result of the proposed taking. Section 42A–1–19(A). Once appointed, the commissioners assess the damages and make a report to the clerk of the court within thirty days. *Id.* The commissioners' sole function is the assessment of damages. *See* § 42A–1–19. The commissioners' final report does not address the issues of public use or necessity. These must be among the issues "remaining in the cause," to which Section 42A–1–21 refers.

### B. Statutory History

14. The versions of the statutes quoted below come from the former Act and were in effect until 1981 when the version of the Code now in effect was enacted. *See, e.g.,* NMSA 1929, § 43–108 (1905), NMSA 1941, § 25–908 (1905), NMSA 1953, § 22–9–8 (1905), NMSA 1978, § 42–1–8 (1905), NMSA 1978, § 42A–1–21 (1981). For simplicity, we refer to the statutes in the former Act by citing to the 1978 compilation prior to its repeal in 1981.

15. The former Act provided, in relevant part:

Within twenty days after the final confirmation of any report of such commissioners, as provided for in Section 42–1–6 NMSA 1978, any person interested therein may *appeal from the said order and confirmation* to the district court of the proper county, by filing a notice with the clerk of said court that an appeal has been so taken, and thereupon the clerk shall docket said cause in the district court and it shall stand for trial in said court as other civil causes are tried and shall be tried de novo,

and the parties, unless they shall waive the same, shall be entitled to a trial by jury as in ordinary cases.

Section 42–1–8 (emphasis added). The former version of the statute limited the right to a jury trial to the issue of compensation. *See State ex rel. Deering,* 54 N.M. at 294, 222 P.2d at 610; *El Paso Elec. Co. v. Milkman,* 66 N.M. 335, 339, 347 P.2d 1002, 1004 (1959); *Transwestern Pipe Line Co. v. Yandell,* 69 N.M. 448, 452, 367 P.2d 938, 940–41 (1961). The Supreme Court explained this limitation by stating that such an "appeal to the district court for a trial de novo is, in effect, not an appeal in the usual sense, but rather a notice of dissatisfaction with the award of compensation and damage by the commissioners and a request for a new award to be made by a jury and the court...." *Transwestern Pipe Line Co.,* 69 N.M. at 452–53, 367 P.2d at 941; *see also State ex rel. State Highway Comm'n,* 67 N.M. at 357, 355 P.2d at 289–90 (stating that "any person dissatisfied with the report of the commissioners may file a notice of appeal, from which a trial de novo in the district court results, [ ] 'from the said order and confirmation.'" (citation omitted)).

16. In addition, Section 42–1–6 of the former Act which permitted the condemnor to proceed with the taking and use of the property condemned once the commissioners' report was filed, notwithstanding exceptions to the report and order for a new appraisement, explicitly stated that "any subsequent proceedings shall only affect the amount of compensation to be allowed." In contrast, the analogous provisions of the Code do not contain the same limiting language. *Compare* §§ 42A–1–21 and –22 *with* §§ 42–1–6 and –8. This also confirms our interpretation of Section 42A–1–21.

17. We are not persuaded by SFSR's reliance on *Milkman,* 66 N.M. 335, 347 P.2d 1002, *Transwestern Pipe Line Co.,* 69 N.M. 448, 367 P.2d 938; *Southern Pacific Co. v. Timberlake,* 81 N.M. 250, 466 P.2d 96 (1970), and *Kaiser Steel Corp. v. W.S. Ranch Co.,* 81 N.M. 414, 467 P.2d 986 (1970), which were decided under the former Act. Nor are we persuaded by SFSR's reliance on *Kennedy v. Yates Petroleum Corp.,* 101 N.M. 268, 681 P.2d 53 (1984). Although reaffirming "that

the question of public use, in the context of a legislative authorization of eminent domain power, is ultimately one for judicial determination[,]" the court did not state, as SFSR contends, that the issue had to be decided as a matter of law by the court without jury input. *Kennedy,* 101 N.M. at 271, 681 P.2d at 56. Contrary to SFSR's contention that the Supreme Court has repeatedly held that the issue of public use is decided by the court as a matter of law, we have found no New Mexico case law to support that assertion. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (assuming that where arguments in briefs are unsupported by cited authority, counsel was unable to find supporting authority).

18. The term "judicial determination," implies that the issue of public use is ultimately for the courts to decide. However, the phrase "judicial determination" does not by itself foreclose the notion of a jury trial. Even if we were to deem the ultimate question of public use and necessity to be a question for the court to decide as a matter of law, that would not preclude a role for the jury in deciding underlying questions of fact by special interrogatories. *See Carrillo v. Rostro,* 114 N.M. 607, 623 n. 16, 845 P.2d 130, 146 n. 16 (1992) (indicating, in dicta, that although question of federal law inquiry for the court to decide as a matter of law, jury may decide any related issues of fact through special interrogatories); *see also Mark V, Inc. v. Mellekas,* 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993) (where facts and circumstances surrounding execution of contract are in dispute, turn on witness credibility, or are susceptible of conflicting inferences, requires appropriate fact finder to resolve the meaning).

19. Nor are we convinced by SFSR's argument that UJI 13–701 and 13–702, NMRA 1997, confirm its view that the issues of public use and necessity must be decided without jury input. UJI 13–702, which should be given in all cases, involving condemnation proceedings, instructs the jury that the condemnor "has the right by law to condemn the property involved" and that "[t]he property was taken for public use." UJI 13–701 identifies only "the amount of

money damages to be paid ... as just compensation" as a jury issue. SFSR contends these provisions indicate that at trial the issues of public use and necessity have already been decided by the court and therefore, the condemnee is not entitled to a jury on these issues.

20. UJI 13–701 and 13–702 are a correct statement of the law under the former Act and under the current alternative condemnation procedure allowed for public roads, state highways and flood control projects. NMSA 1978, §§ 42–2–1 to –24 (1959, as amended through 1981). It is not an accurate statement of the procedure under Section 42A–1–21. In fact, the committee comments for UJI 13–702 indicate that instructions have not been specifically prepared to be used under the de novo appeal procedure of Section 42A–1–21. SFSR correctly notes that the comments direct the trial court and counsel to *Transwestern Pipe Line Co.*, 69 N.M. at 452, 367 P.2d at 941, which held that a jury trial is "limited to the issue of the amount of compensation and damages." As we previously noted, however, *Transwestern Pipe Line Co.* is no longer a reliable precedent because the decision was based on the former Act. "In any event, the committee comment is not the law of New Mexico, and comments must stand on their own merit without implied endorsement of this Court." *Cress v. Scott,* 117 N.M. 3, 5–6, 868 P.2d 648, 650–51 (1994) (citations omitted).

21. SFSR further contends that no learned treatise has yet identified New Mexico as a state that has specifically created the right to a jury trial in condemnation cases. SFSR cites *Nichols' The Law of Eminent Domain* as listing New Mexico as of the many states which does not provide a right to a jury trial in eminent domain cases. 1A Julius L. Sackman & Patrick J. Rohan, *Nichols' The Law Of Eminent Domain* § 4.105[3], at 4–142 to –146 (3d ed.1997). New Mexico is listed as one of the majority of states whose constitution does not require that damages in condemnation proceedings be ascertained by a jury. *Id.* That is in line with our interpretation of our constitution. Our decision, however, is not based on a constitu-

tional requirement. Rather, it is founded on the statutory provisions of the Code.

22. We do not agree with SFSR that our interpretation of Section 42A–1–21 is inconsistent with the nature of the numerous statutes either amended or added by the legislature in 1981. Even assuming that the legislature's goal in amending the Code was, as SFSR contends, to adjust the balance of powers between the parties by giving the condemnee additional authority to ensure good faith negotiations, these amendments have no limiting effect on the right to a jury trial on the issues of public use and necessity. To the contrary, the 1981 amendments to the procedural statutes of the Code, such as Sections 42A–1–1 and 42A–1–22, support our interpretation of Section 42A–1–21, as discussed above. Nor do we agree with SFSR that because Section 42A–1–13 limits the applicability of newly enacted Sections 42A–1–8 to 42A–1–12, "to entries for suitability studies made outside of the exterior boundaries of any municipality[,]" this somehow limits the right created by Section 42A–1–21 to a jury trial on issues other than compensation. While Section 42A–1–13 expressly limits Sections 42A–1–8 to 42A–1–12, it in no way effects the right to a jury trial under Section 42A–1–21.

23. Moreover, we believe that the right to a jury trial on any issues remaining in the cause, including public use and necessity, imposes no greater burden on the parties to a condemnation action than did the right to a jury trial under the former Act. SFSR argues that under our interpretation of Section 42A–1–21, a condemnor is required to obtain the appointment of three commissioners, pay to the clerk of the court the amount assessed by the commissioners as compensation and damages, lose the interest it could have earned on such funds during the litigation, make objections to the amount of compensation determined by the commissioners, and still have to submit the threshold issues of public use and necessity to a jury. However, to appeal the award of compensation determined by the commissioners under the former Act, these same pre-conditions were required. *See* §§ 42–1–1 (requiring appointment of commissioners for the assessment of

damages after notice of petition provided and requiring condemnor's payment of such damages to the clerk immediately upon filing of the commissioners' report); 42–1–8 (permitting appeal from commissioners' report on compensation within twenty days after the confirmation of such report); 42–1–6 (allowing condemnee to make exceptions to the commissioners' report within thirty days of filing of such report, despite prior payment of damages assessed to the clerk under Section 42–1–3). Thus, the only effect Section 42A–1–21 has on this entire process is that it adds issues other than compensation to the questions submitted to the jury. We fail to see how this constitutes such a "burdensome procedure."

24. Finally, we note that Baucis' demand for a jury was premature, given that such a demand can be made only after the final confirmation of the commissioners' report. Section 42A–1–21(A). Here, the commissioners had not yet been appointed when the case was certified for interlocutory appeal. Our concern with issuing advisory opinions stems from the waste of judicial resources used to resolve hypothetical situations which may or may not arise. *See New Mexico Indus. Energy Consumers v. New Mexico Pub. Serv. Comm'n,* 111 N.M. 622, 629–30, 808 P.2d 592, 599–600 (1991) (" 'The basic purpose of ripeness law is and always has been to conserve judicial machinery for problems which are real and present or imminent, not to squander it on abstract or hypothetical or remote problems.' "(citation omitted)). However, these concerns are not present in this case because the district court's determination is ripe for all purposes, since it is inevitable that the issue will return to us without alteration after the commissioners' report is confirmed. Consequently, there is no judicial interest in awaiting the confirmation of the commissioners' report.

*CONCLUSION*

25. We affirm the district court's denial of SFSR's oral motion to strike Baucis' jury demand. Because the district court denied SFSR's request for immediate possession, we remand for the appointment of commissioners and assessment of damages. After the

final confirmation of the commissioners' report, Baucis may demand a de novo trial by jury on any remaining issues, including the issues of public use and necessity.

26. **IT IS SO ORDERED.**

ALARID and WECHSLER, JJ., concur.