2000-NMCA-018

995 P.2d 1053

**INSURE NEW MEXICO, LLC, Plaintiff–Appellant/Cross–Appellee,**

**v.**

**Robert McGONIGLE, Defendant–Appellee/Cross–Appellant.**

No. 19,626.

Court of Appeals of New Mexico.

Feb. 11, 2000.

Philip Craig Snyder, Albuquerque, for Appellant.

William L. Lutz, Martin, Lutz, Roggow & Brower, P.C., Las Cruces, for Appellee.

### OPINION

APODACA, J.

{1} Plaintiff appeals the denial of its request for a permanent injunction prohibiting Defendant from directly soliciting certain of Plaintiff's clients. Defendant cross-appeals, contending first, that the trial court erred in granting the preliminary injunction and, second, that the employment contract between Defendant and Plaintiff's predecessor-in-interest was nonassignable. On his second issue, Defendant argues that, because the contract was not assignable, the provision prohibiting Defendant from using trade secrets or confidential information was not enforceable. Defendant also requests that we preserve in our mandate "a right of independent action for malicious prosecution." We affirm the trial court's denial of the permanent injunction. We decline to reach the issues raised by Defendant in his cross-appeal because those issues are moot or require an advisory opinion. We decline to preserve in our mandate an independent action for malicious prosecution because the issue is not properly before us and again we decline to issue an advisory opinion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

{2} Defendant was employed on August 21, 1991, as a salesperson by Insure New Mexico, a general partnership and Plaintiff's predecessor-in-interest. Plaintiff's primary business was the brokerage of insurance. Defendant and Plaintiff's predecessor-in-interest entered into an employment contract. The contract provision relevant to this appeal reads as follows:

It shall be understood that in the event of termination of this agreement for any cause whatsoever, the use, control and ownership of expirations and all records of expirations of business produced by the employee shall remain the property of the employer and left in his undisputed posses-

sion. Employee further agrees that he will not use any confidential information or trade secrets in the solicitation of any customer of the employer for the sale of insurance.

{3} On July 11, 1995, Defendant tendered a letter of resignation effective July 25, 1995, informing Plaintiff's predecessor-in-interest that he had accepted a position of employment with Insurance Services of Southern New Mexico (Insurance Services) in that company's newly-opened Deming office. Insurance Services' primary business was also the brokerage of insurance. Defendant and Plaintiff terminated their relationship on July 11, 1995. On July 28, 1995, Plaintiff, as Insure New Mexico, LLC was formed. Plaintiff, a corporation, was the successor to all of the assets of Insure New Mexico, the partnership.

{4} On June 20, 1996, Defendant, as an employee of Insurance Services, met with Larry Adcock of Border Foods, Inc., one of Plaintiff's customers. Accompanying him were two representatives of AFLAC, an insurance company. The purpose of the visit was to sell insurance. While employed by Plaintiff, Defendant serviced the Border Foods account. As a result, he had a previous relationship with Adcock and was aware of the insurance coverage Border Foods carried. Adcock agreed to meet with Defendant because of this prior relationship. Adcock testified that he received "cold calls" from other insurance agents but usually turned them down. Defendant was unsuccessful in selling any insurance to Border Foods. After Defendant met with Adcock, Adcock contacted and informed Plaintiff that Defendant had spoken with him and attempted to sell insurance to Border Foods. At Plaintiff's request, Jim Glynn of Border Foods wrote a letter to Plaintiff "advising" Plaintiff that Defendant had contacted Border Foods in an attempt to sell insurance to Border Foods. That letter was also signed by Adcock.

{5} These events led to Plaintiff's application for a temporary restraining order and its complaint for a preliminary injunction, as well as a permanent injunction. A temporary restraining order was entered on July 2,

1996. After a hearing on Plaintiff's request for a preliminary injunction, the trial court issued a preliminary injunction prohibiting Defendant from directly soliciting particular customers of Plaintiff. After a final hearing on the merits of Plaintiff's complaint, the trial court dissolved the preliminary injunction and denied the permanent injunction.

## II. DISCUSSION

### A. Standard of Review

{6} In determining whether to grant injunctive relief, a trial court must consider a number of factors and "balance the equities and hardships." *Key v. Chrysler Motors Corp.*, 119 N.M. 267, 274, 889 P.2d 875, 882 (Ct.App.1995) *reversed on other grounds*, 1996–NMSC–038, 121 N.M. 764, 918 P.2d 350. Some of these factors include: (1) the character of the interest to be protected; (2) the relative adequacy to the plaintiff of an injunction, when compared to other remedies; (3) the interests of third parties; (4) the practicability of granting and enforcing the order; and (5) the relative hardship likely to result to the defendant if granted and to the plaintiff if denied. *Wilcox v. Timberon Protective Ass'n*, 111 N.M. 478, 485–86, 806 P.2d 1068, 1075–76 (Ct.App.1990).

{7} " 'Injunctions are harsh and drastic remedies [that] should issue only in extreme cases of pressing necessity and only where there is no adequate ... remedy at law.' " *Hill v. Community of Damien of Molokai*, 1996–NMSC–008, ¶ 51, 121 N.M. 353, 911 P.2d 861 (quoting *Padilla v. Lawrence*, 101 N.M. 556, 562, 685 P.2d 964, 970 (Ct.App.1984) (alteration in original)). The granting of an injunction is an equitable remedy, and whether to grant equitable relief lies within the sound discretion of the trial court. *Moody v. Stribling*, 1999–NMCA–094, ¶ 30, 127 N.M. 630, 985 P.2d 1210. The trial court's discretion will not be disturbed unless there is an abuse of discretion. *Id.* "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996–NMSC–078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

{8} If there is substantial evidence to support the trial court's decision, we will not disturb that decision on appeal. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990). In reviewing a claim that the trial court's decision was not supported by substantial evidence, the appellate court views the evidence "in the light most favorable to the decision below, resolving all conflicts in the evidence in favor of that decision and disregarding evidence to the contrary." *Powers v. Miller*, 1999–NMCA–080, ¶ 14, 127 N.M. 496, 984 P.2d 177. We will reverse only when the evidence, or reasonable inferences from the evidence, cannot support the trial court's findings and conclusions. *McCurry v. McCurry*, 117 N.M. 564, 567, 874 P.2d 25, 28 (Ct.App.1994).

### B. The Direct Appeal

{9} Plaintiff relies heavily on the trial court's findings of fact and conclusions of law that the trial court entered when granting the preliminary injunction. Such reliance, we believe, is misplaced. There is a significant difference between a preliminary and a permanent injunction that may warrant different considerations by a trial court. "The object of the preliminary injunction is to preserve the status quo pending the litigation of the merits. This is quite different from finally determining the cause itself." *Penn v. San Juan Hosp. Inc.*, 528 F.2d 1181, 1185 (10th Cir.1975). A preliminary injunction does not determine the merits of the case, nor does it determine controverted facts. *See* 43 C.J.S. *Injunctions* § 5, at 745–46 (1978). The trial court may reconsider the facts upon which the preliminary decree was issued in deciding whether to issue a permanent injunction. *Cf. Economy Roofing & Insulating Co. v. Zumaris*, 538 N.W.2d 641, 648 (Iowa 1995) (holding that denial of a preliminary injunction does not foreclose a trial on the merits for a permanent injunction).

{10} Plaintiff nonetheless relies on Rule 1–066(A)(2) NMRA 1999, which states that "evidence received upon an appli-

cation for a preliminary injunction [that] would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial." The trial court, however, is not bound by its previous findings based on that evidence, and may decide, after further deliberation, and the presentation of further evidence, that its prior findings and conclusions were incorrect. *See San Juan Hosp. Inc.,* 528 F.2d at 1185 (stating that a preliminary injunction is to preserve the status quo and has no bearing on the merits of a case); 43 C.J.S. *Injunctions* § 5, at 745–46 (stating that a preliminary injunction does not have any bearing on the merits of a case). We believe, therefore, that the entry of a preliminary injunction in this case did not prevent the trial court from denying entry of a permanent injunction after considering additional evidence at a final hearing.

{11} Plaintiff maintains that, if potential harm is shown, an injunction should issue. As a subpart to this argument, Plaintiff contends that the trial court's determination not to enter a permanent injunction was based largely on the trial court's finding that Plaintiff had not suffered any harm. Although the trial court found that Plaintiff had suffered no damages, that finding, as we note below, was only one of a number of factors considered by the trial court in determining whether to grant or deny the permanent injunction. Nevertheless, it was an appropriate factor for the trial court to consider. *See Wilcox,* 111 N.M. at 486, 806 P.2d at 1076 ("In New Mexico, injunctions are granted to prevent irreparable injury...."); *cf. LaBalbo v. Hymes,* 115 N.M. 314, 318, 850 P.2d 1017, 1021 (Ct.App.1993) ("To obtain a preliminary injunction, a plaintiff must show that ... [it] will suffer irreparable injury unless the injunction is granted.").

{12} Plaintiff relies on *Cafeteria Operators, L.P. v. Coronado–Santa Fe Assocs., L.P.,* 1998–NMCA–005, 124 N.M. 440, 952 P.2d 435, for the proposition that it need not prove damages in order to obtain an injunction. Plaintiff's reliance is based on its contention that irreparable injury is not required to enforce a covenant that the parties freely entered into. *See id.* ¶ 18 ("The gen-

eral rule, however, is that a party need not prove damages to enforce a ... covenant."). As we note below, the existence or absence of irreparable injury was not the determinative factor in the trial court's denial of the permanent injunction. The trial court is required to examine general equitable factors whenever injunctive relief is requested. *See Cafeteria Operators, L.P.,* 1998–NMCA–005, ¶ 19, 124 N.M. 440, 952 P.2d 435 (stating seven general equitable factors to be considered). We believe the trial court considered these factors, and therefore are unpersuaded by Plaintiff's reliance on *Cafeteria Operators.*

{13} Our review of the record reveals that the trial court entered fifty-seven findings of fact and fifteen conclusions of law. Of the fifty-seven findings of fact, eleven of them bear directly on the trial court's decision not to enter the permanent injunction. Of the fifteen conclusions of law, five of them bear directly on the trial court's decision not to issue the permanent injunction.

{14} The trial court found that (1) there was no covenant not to compete in the parties' contract; (2) Defendant did not use confidential information or trade secrets in the solicitation of Plaintiff's customers; (3) Plaintiff failed to prove that its customers had any particular needs or characteristics that distinguish them, and anyone could easily identify potential customers in the Deming–Lordsburg area; (4) the expiration dates of Plaintiff's customers' insurance policies were three years old and therefore stale; and (5) insureds usually told solicitors their insurance needs and expiration dates. The trial court concluded that (1) because the particular needs or characteristics of Plaintiff's customers did not require special knowledge, the identity and location of Plaintiff's customers were not trade secrets or confidential information, and (2) that while the expiration dates of Plaintiff's customer's policies might be confidential, any information Defendant had regarding expiration dates of policies was stale. It is these findings and conclusions, as well as the lack of proof of damages, we believe, that formed the basis for the trial court's denial of permanent injunctive relief.

{15} Plaintiff argues that, because Defendant (1) had a managerial role with Plaintiff, (2) had knowledge of Plaintiff's client's confidential information and trade secrets, and (3) solicited customers of Plaintiff on behalf of Defendant's new employer, he necessarily used confidential information and trade secrets. Plaintiff thus contends that Defendant should be enjoined from soliciting those commercial accounts. Plaintiff's general manager, however, testified that when a salesperson contacts a client to renew a policy of insurance, he must obtain current information in order to properly assess the client's insurance needs. Plaintiff's expert witness testified that a competent insurance salesperson should obtain detailed information from a potential client before preparing a bid and proposal to that client.

{16} The trial court found that insureds usually inform solicitors of their insurance needs and expiration dates. Plaintiff does not challenge this finding. It follows that Defendant could obtain the information necessary to compete effectively with Plaintiff by simply making inquiries of the insured. For this reason, there was substantial evidence supporting the trial court's finding that the particular needs or characteristics of Plaintiff's customers were not peculiar and did not require special information.

{17} The evidence adduced at the trial court's final hearing indicated that Defendant obtained experience in providing insurance to commercial clients and that he obtained knowledge of the information he needed to gather from a potential client in order to provide that client with the best possible product and price. Based on this evidence, we hold that the trial court could conclude that this experience and knowledge, in and of itself, was not a trade secret. The trial court could determine that the knowledge and information Defendant obtained was the same information all competent insurance salespersons obtain in order to effectively provide risk management services.

{18} A trade secret, on the other hand, is "information . . . that[ ] derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means

by other persons who can obtain economic value from its disclosure or use." NMSA 1978, § 57–3A–2(D)(1) (1989). General skills and knowledge do not rise to the level of trade secrets. *See PepsiCo, Inc. v. Redmond,* 54 F.3d 1262, 1269 (7th Cir.1995).

{19} Plaintiff next contends that the trial court did not properly weigh the parties' respective equities and hardships. Specifically, Plaintiff argues that there was evidence that it would suffer future harm if the injunction was not granted. It is the trial court's role to weigh the equities and hardships. *See LaBalbo,* 115 N.M. at 318, 850 P.2d at 1021; *Wilcox,* 111 N.M. at 485–86, 806 P.2d at 1075–76. Absent an abuse of discretion, we will not disturb the trial court's decision of where the equities lie. *Moody,* 1999–NMCA–094, ¶ 30, 127 N.M. 630, 985 P.2d 1210. The fact that there is evidence to support Plaintiff's contentions is not the proper inquiry. "We emphasize . . . that the question on appeal is whether substantial evidence supports the trial court's findings, not whether the evidence would have supported different findings." *Powers,* 1999–NMCA–080, ¶ 14, 127 N.M. 496, 984 P.2d 177.

{20} Plaintiff concedes that it had not lost any customers as a result of Defendant's conduct. We also determine that the testimony of Plaintiff's own expert witness, the testimony of Plaintiff's general manager, the deposition testimony of Samuel Austin, agent for Insurance Services, and the testimony of Defendant supported several of the trial court's findings. Those findings were that: (1) Defendant did not use any confidential information or trade secrets, (2) Plaintiff's customer list was not confidential information or trade secrets, (3) any information Defendant had that might be considered confidential was now stale, (4) insureds generally provide insurance needs and expiration dates of policies to solicitors, and (5) the particular needs or characteristics of those customers were not peculiar and did not require special information. Based on Plaintiff's concession and these findings, which after reviewing the record we determine are supported by substantial evidence, we hold that the trial court

did not abuse its discretion in concluding that the hardship to Defendant outweighed any harm to Plaintiff.

{21} Plaintiff also relies on the inevitable discovery doctrine, arguing that, because of Defendant's position with Plaintiff, his use of confidential information was inevitable. Plaintiff's contention, we believe, ignores the trial court's findings that: (1) the particular needs or characteristics of those customers were not peculiar and did not require special information, (2) any confidential information in Defendant's possession was stale, and (3) insureds generally provided solicitors with the information Plaintiff contended was confidential. Consequently, the trial court could have concluded that Defendant's use of confidential information was not inevitable.

{22} Plaintiff relies on several cases it contends support its position that Defendant's use of confidential information is inevitable. *See PepsiCo, Inc. v. Redmond,* 54 F.3d 1262 (7th Cir.1995); *Merck & Co. v. Lyon,* 941 F.Supp. 1443 (M.D.N.C.1996); *Uncle B's Bakery, Inc. v. O'Rourke,* 920 F.Supp. 1405 (N.D.Iowa 1996); *APAC Teleservices, Inc. v. McRae,* 985 F.Supp. 852 (N.D.Iowa 1997); *Lumex, Inc. v. Highsmith,* 919 F.Supp. 624 (E.D.N.Y.1996); *Doubleclick, Inc. v. Henderson,* 1997 WL 731413 (N.Y.Sup.Ct.1997). Even if we were to assume that the information Defendant possessed was confidential or a trade secret, Plaintiff's reliance on these cases is misplaced because they concerned either specific marketing strategies of the employer's products, specific manufacturing techniques of the employer or other highly technical information that is clearly unknown to others outside of the company and not otherwise obtainable by others in the industry. The information at issue here was not of that nature. Indeed, the trial court specifically found that the information was stale or otherwise obtainable. The inevitable discovery doctrine is therefore not applicable.

{23} Lastly, Plaintiff contends that the business relationships Defendant made during his tenure with Plaintiff are confidential information or trade secrets. We disagree. Plaintiff argues that Defendant knew to contact Adcock at Border Foods only because Defendant was previously employed with Plaintiff. Adcock, however, testified that he typically received "cold calls" from other insurance salespersons and decided to meet with Defendant because of his personal friendship with him. If other insurance agents were aware that Adcock was the individual to call at Border Foods, we fail to see how that information can be considered a trade secret or confidential information. Besides, the fact that Plaintiff had developed a relationship with Adcock does not transform that information, generally known to other insurance agents, into confidential information or a trade secret.

{24} We should note at this juncture that we deem important in this appeal the trial court's finding that the employment contract between the parties failed to include a covenant not to compete. Such covenants, which customarily require an employee not to work or compete in the same business in a certain area for a specified length of time, are clearly distinguishable from the contractual provision in this appeal. Non-competition covenants are ordinarily enforceable as long as a court deems them reasonable. *See Bowen v. Carlsbad Ins. & Real Estate Inc.,* 104 N.M. 514, 516–17, 724 P.2d 223, 225–26 (1986). In addition to, or in lieu of the disputed provision, the parties could have included a non-competition clause in the contract. Having failed to do so, Plaintiff bears the responsibility for not having protected itself in that manner.

{25} We conclude that the trial court did not abuse its discretion in dissolving the preliminary injunction and in denying the permanent injunction.

## C. The Cross–Appeal

{26} Defendant argues that the trial court erred in two ways by entering a preliminary injunction. First, he contends that the employment contract between Plaintiff's predecessor-in-interest and Plaintiff was nonassignable because it was a personal service contract. We need not reach this issue because under the facts of this case, Defendant prevails even if we assumed, without

deciding, that the contract was assignable. Second, Defendant contends that the trial court erred in entering the preliminary injunction. Because the preliminary injunction has since been dissolved and the permanent injunction denied, we determine that this issue is moot.

{27} Defendant acknowledges the lack of a remedy. Nonetheless, he requests that we "remind the trial court that temporary injunctions where there is a potential for damages if the injunction is wrongful normally should require a bond to protect the parties that may be harmed by the improper injunction." We will not issue an advisory opinion in the absence of a justiciable issue. *See Santa Fe S. Ry. v. Baucis Ltd. Liab. Co.*, 1998–NMCA–002, ¶ 24, 124 N.M. 430, 952 P.2d 31. Finally, Defendant requests that we preserve in the mandate to be issued in this appeal "that there is a right of independent action for malicious prosecution." Defendant, however, has not filed such an action and therefore this issue is likewise not before us. *See id.*

## III. CONCLUSION

{28} We conclude that the trial court's findings were supported by substantial evidence and that the court did not abuse its discretion by denying Plaintiff's request for a permanent injunction. The relief requested by Defendant in his cross-appeal is denied. The trial court's judgment is therefore affirmed.

{29}  **IT IS SO ORDERED.**

BOSSON and SUTIN, JJ., concur.