This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**JUAN TAFOYA LAND CORPORATION,**

    Petitioner-Appellant,

v.                                        **NO. 35,280**

**THE ACTUAL AND PUTATIVE SHAREHOLDERS OF THE JUAN TAFOYA LAND CORPORATION,**

    Respondents-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alan M. Malott, District Judge**

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

Albuquerque Advocates PC
Darryl W. Millet
Albuquerque, NM

for Appellant

Rammelkamp, Muehlenweg & Cordova, P.A.
Robert J. Muehlenweg

Brian Vogler
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

{1}     The Juan Tafoya Land Corporation (the Corporation) appeals a summary judgment finding that its action seeking a declaration "ratifying" its shareholder list is barred by the doctrine of res judicata. [RP 1-6, 1014-1032] In our notice of proposed summary disposition, we proposed to affirm. [CN 7] The Corporation has filed a memorandum in opposition to that disposition and three separate groups of appellees have also filed responsive memoranda.[1] Having duly considered all of those memoranda, we now affirm.

{2}     In its memorandum, the Corporation continues to argue that a lawsuit filed in 2007 was ultimately dismissed for lack of prosecution, and it therefore cannot form the basis of preclusion.[2] [MIO 1, 16] That argument, however, completely ignores the

---

[1]One group of respondents has joined in the Corporation's memorandum in opposition, one group has filed a memorandum in support of this Court's proposed disposition, and a third group has filed a "notice of position" that does not oppose the proposed disposition.

[2]Although this argument is asserted as the fourth issue in the Corporation's memorandum in opposition, it was asserted as issue 1 in the docketing statement. [DS 10]

entry of a summary judgment on the merits in November 2008, which formed the basis of this Court's proposed summary disposition. [CN 2-5] "Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law." *Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683. As the Corporation makes no attempt to explain how or why the summary judgment was not a decision on the merits, we find that the 2007 litigation resulted in a valid final judgment on the merits for purposes of res judicata.

{3}     The Corporation also continues to argue that a prior corporate board failed to properly maintain the list of corporate shareholders.[3] [MIO 2, 22-24] Our proposed summary disposition suggested that any impropriety by the prior board should have been asserted in the 2007 litigation. [CN 5-6][4] And, of course, that issue was the issue

---

[3]Although this argument is asserted as the fifth issue in the Corporation's memorandum in opposition, it was asserted as part of issue two in the docketing statement. [DS 10]

[4]The Corporation also suggests—as the second issue asserted in its memorandum in opposition—that the res judicata effect of a prior declaratory judgment is narrowly limited to the matters actually declared in the judgment. [RP 1, 10-13] We note, however, that the relevant declaratory judgment actions involving the Corporation resulted in explicit declarations contrary to the relief that the Corporation sought in its most recent petition: The 1971 litigation resulted in a declaration regarding the specific heirs entitled to ownership of the Corporation, which was founded during the pendency of that suit [RP 711-17], and the 2007 litigation declared that the corporate board was fulfilling its duty of care in maintaining the shareholder list [RP 792]. This case explicitly sought a contrary declaration that different persons

addressed in that litigation, which found that the board did not breach its duty of care in maintaining the list. [RP 792] The Corporation's memorandum in opposition now asserts both that the prior board took inconsistent positions with regard to determining who holds shares in the Corporation and that the district court judgment in this case is "contrary" to that board's practices and to the final judgment in a prior case. [MIO 2, 19-26] With regard to any inconsistency or impropriety in the prior board's actions, we reiterate that the 2007 litigation was addressed to that question.

{4}     With regard to the judgment in this case, we note at the outset that the district court's judgment merely dismissed the Corporation's petition on the basis of res judicata. [RP 1032] The Corporation's memorandum does not explain how that judgment, which did not declare any new method for distributing shares, can be in conflict with any prior judgment addressing the distribution of shares.

{5}     In any event, the written judgment at issue in this appeal includes a thorough consideration of the prior litigation involving the Corporation. [RP 1014-1032] The case that the Corporation now asserts to be in conflict with the judgment dismissing its petition resulted in an opinion by our Supreme Court, reported as *Marquez v. Juan Tafoya Land Corp.*, 1981-NMSC-080, 96 N.M. 503, 632 P.2d 738. Generally, that

---

are entitled to ownership of the Corporation. [RP 4]

opinion affirmed the distribution of fractional corporate shares, at the time of incorporation, to the heirs of the original Juan Tafoya Land Grant pursuant to the laws of descent and distribution. *See id.* ¶ 1 (discussing incorporation); *id.* ¶ 15 (approving the method of distribution).

{6}    Distributing shares in this way involves two distinct questions. First, it must be determined who is entitled to hold shares in the Corporation, and second, it must be determined what share of the Corporation each individual shareholder will receive. *Marquez* involved only the latter question. *Id.* ¶¶ 11-15. In the process of answering that question, the Supreme Court considered two lists of heirs to the original Juan Tafoya Land Grant generated in prior litigation and incorporated in a prior decree: a list of "trunk heirs," most of whom were deceased, and a list of the then-living descendants of the "trunk heirs." *Id.* ¶ 3. Ultimately, the *Marquez* opinion affirmed the district court's approved method of distribution, which involved assigning one corporate share to each of the "trunk heirs" and then distributing fractional shares to the living descendants of deceased "trunk heirs." *Id.* ¶¶ 12, 15.

{7}    The Corporation now characterizes the *Marquez* case as having held that "the 'living heirs' list was not the list that should be used; instead the [C]orporation had proceeded properly in using the . . . 'trunk heirs' list." [MIO 2 (emphasis omitted)] The Corporation is mistaken. *Marquez* affirmed the distribution of shares to everyone

on the list of then-living heirs, with the "trunk heirs" list being used to determine the size of each person's corporate share. *Id.* ¶ 4. Thus, to the extent that the summary judgment in this case requires adherence, in any form, to the so-called "living heirs" list for purposes of determining who is entitled to participate in ownership of the Corporation, that judgment would not be in conflict with the holding in *Marquez*.

**{8}** The Corporation's docketing statement in this appeal also asserted that the judgment in this case somehow prevents it from updating its shareholder list on the basis of events that have occurred since the conclusion of the 2007 litigation.[5] [DS 10] Our proposed disposition suggested that, with regard to shareholder changes resulting from "deaths and transfers in recent years, there appears to be no dispute that the Corporation must recognize such changes in ownership," and, as a result, the entirely hypothetical problem suggested by the Corporation in its docketing statement does not involve any actual controversy between any of the parties to this case. [CN 6-7] As it is not the proper role of an appellate court to issue an "advisory opinion in the absence of a justiciable issue," *Insure New Mexico, LLC v. McGonigle*, 2000-NMCA-018, ¶ 27, 128 N.M. 611, 995 P.2d 1053, we proposed to hold that the Corporation

---

[5]Although this argument is asserted as the first issue in the Corporation's memorandum in opposition, it was asserted as part of issue 2 in the docketing statement. [DS 10]

had presented nothing for this Court to review in connection with such updates to the shareholder list.

{9} In its memorandum in opposition, the Corporation has now characterized that portion of our notice of proposed summary disposition as having suggested that the Corporation should not be barred from "correcting its shareholder lists," and it proceeds to suggest that such corrections would include remedying alleged errors in the "trunk heirs" and "living heirs" lists that were generated in the 1970s. [MIO 1, 3-7] These characterizations are unwarranted. This Court did not suggest in any way that such actions would be appropriate or permitted; instead, the Court addressed the specific issue raised in the Corporation's docketing statement, which was that "some of the changes to the shareholder list were due to deaths of shareholders or assignment of shares that occurred after 2007." [DS 10][6] We see nothing in the history of the Corporation or the litigation involving it that would prevent the current board from

---

[6]The Corporation also asserted that "the other changes did not the [sic] result from the disputed interpretation of the Supreme Court's language 'from Marquez.' " [DS 10] Unable to decipher that statement, this Court proposed to decline review on the basis that we do not review unclear or undeveloped arguments. *State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181. As the Corporation's memorandum in opposition offers no clarification of that assertion, we deem the issue abandoned. *See State v. Johnson*, 1988-NMCA-029, ¶ 8, 107 N.M. 356, 758 P.2d 306 (recognizing that failure to respond to the proposed disposition of an issue is an abandonment of that issue).

acknowledging transfers of shares due to death or assignment, and this case involved no dispute regarding such transfers.

{10} Nonetheless, to the extent that the Corporation is now expanding its argument to assert that the district court has precluded it from re-litigating the question of who should have been issued corporate shares in the late 1970s, we agree: the Corporation is precluded from re-litigating that question because that question was thoroughly litigated at the time of incorporation. The "trunk heirs" list, as well as the list of then-living heirs, were both incorporated into a decree issued on September 11, 1975. [RP 714] *See Marquez*, 1981-NMSC-080, ¶ 12 (discussing the contents of the decree). There has also been subsequent litigation, involving the question of how shares should be distributed among the heirs listed in that decree. *See, generally*, *Marquez*, 1981-NMSC-080. And, in 2007, the question of whether the board was satisfying its statutory duty to maintain a list of shareholders was also litigated. [RP 749-92] In sum, the lengthy history of litigation over ownership of the Corporation has resulted in final judicial determinations answering many different questions, including: the persons entitled to hold shares, the method of distributing shares to those people, and the propriety of the prior board's maintenance of the shareholder list. The judgment in this case, which simply declined to allow a relitigation of any of those three questions, is not in conflict with those prior judgments.

8

{11} The Corporation's memorandum in opposition also asserts three issues that were not raised in its docketing statement. [MIO 1-3] We construe the assertion of these new issues as a motion to amend the docketing statement to raise additional issues. In order to show good cause for our allowance of an amendment to a docketing statement, an appellant must establish: (1) that the motion is timely, (2) that the new issues to be raised were either (a) properly preserved below or (b) allowed to be raised for the first time on appeal, and (3) that the issues raised are viable. *See State v. Moore*, 1989-NMCA-073, ¶ 42, 109 N.M. 119, 782 P.2d 91, *overruled on other grounds by State v. Salgado*, 1991-NMCA-044, ¶ 2, 112 N.M. 537, 817 P.2d 730.

{12} The Corporation's first new issue, which is raised as the third issue in the memorandum in opposition, asserts that the district court erred by applying the doctrine of res judicata against the party who prevailed in a previous suit. [MIO 1, 8-9] The Corporation does not appear to have raised this issue below. In support of its position on appeal, the Corporation quotes out-of-state dicta to the effect that one of the purposes of res judicata is to allow a "prevailing party to enjoy the benefits of its victory." [MIO 8] (Internal quotation marks and citation omitted.) While it is generally true that this is one of the benefits of res judicata, largely because a prevailing party will not usually file a subsequent suit, the doctrine does not include any "prevailing party" requirement. Instead, the doctrine applies whenever its four

9

elements are present: "(1) identity of parties or privies, (2) identity of capacity or character of persons for or against whom the claim is made, (3) same cause of action, and (4) same subject matter." *Three Rivers Land Co., Inc. v. Maddoux*, 1982-NMSC-111, ¶ 21, 98 N.M. 690, 652 P.2d 240, *overruled on other grounds by Universal Life Church v. Coxon*, 1986-NMSC-086, 105 N.M. 57, 728 P.2d 467.

{13}　We also note that the primary purposes of res judicata are "to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication." *Id.* Each of these purposes is served by the application of res judicata in this case, as the Corporation's petition seeks to reopen questions determined in prior suits in the hope of obtaining an inconsistent decision on those questions, while forcing all parties, as well as the court, to re-litigate previously decided matters. We are not persuaded that the defense of res judicata cannot be asserted against a party who prevailed in previous litigation. We conclude that this issue is not viable, that it was not preserved below, and that the Corporation has not asserted any reason that this issue could be raised for the first time on appeal. The Corporation's motion to amend its docketing statement to add this issue is denied.

{14}　As its second new issue, which is the sixth issue in its memorandum in opposition, the Corporation asserts that some of the respondents in this suit should not

be bound by prior judgments because they were not in privity with parties to the prior litigation involving ownership of the Corporation. [MIO 1, 17-18] This issue also does not appear to have been raised below, and the Corporation asserts no basis to believe that it may be properly raised for the first time on appeal. And, in any event, the Corporation's central assertion is that these respondents, whom the Corporation characterizes as "newly discovered shareholders," should not be "barred from litigating [their] right to shares [in the Corporation]." [MIO 17-18] The right to ownership of corporate shares, however, was litigated—on a global basis—in the series of suits that culminated in *Marquez. See Marquez,* 1981-NMSC-080, ¶¶ 1-4 (describing some of the relevant litigation).

{15}     That course of litigation involved the appointment of a special master who compiled a list of the members of the original Juan Tafoya Land Grant as well as the then-living heirs of those members who were entitled to shares in the Corporation at the time it was created. *Id.* ¶ 12. Of particular relevance to the question of privity, prior to compiling those lists, the special master made service by publication of a notice for determination of heirship "to all and any individuals claiming heirship or any interest in a certain tract of property known as the Juan Tafoya Land Grant or tract." [RP 698, 701] As the district court noted in its summary judgment, "[t]he Corporation does not challenge the validity or effectiveness of this notice [and, t]hus,

11

it appears that anyone with a claim to the lands held by the [Juan Tafoya Land Grant] would be bound by the determination in that suit." [RP 1025]

{16} Thus, because the right to ownership of any share in the Corporation is directly traceable to co-tenancy in the ownership of the Juan Tafoya Land Grant, *Marquez*, 1981-NMSC-080, ¶ 14, any person with a claim to such shares would, of necessity, be bound by the final judgment incorporating the special master's lists of heirs. *See Bentz v. Peterson*, 1988-NMCA-071, ¶ 14, 107 N.M. 597, 762 P.2d 259 (discussing validity of service by publication). As a result, there appears to be no reason that the Corporation's "newly discovered shareholders" cannot be bound to the special master's determination of heirship—and the final judgment declaring that determination—for purposes of res judicata. We, therefore, conclude that this issue is neither viable nor preserved, and we deny the Corporation's motion to amend its docketing statement to add this issue.

{17} Finally, the Corporation's memorandum in opposition now asserts, as its seventh issue, that the entry of summary judgment was precluded by the existence of undeveloped facts. [MIO 3] This issue does appear to have been raised below, but the only factual issue asserted in the memorandum in opposition is that "there is no evidence supporting Appellees' interpretation of the critical phrase 'from Marquez.' " [MIO 3, 24-26] The purported significance of the phrase "from Marquez" derives

from the fact that it was used in the *Marquez* opinion to describe the members of the Juan Tafoya Land Grant who were entitled to shares in the newly formed Corporation. *Marquez*, 1981-NMSC-080, ¶ 4. The Corporation asserts that "from Marquez" should be read to mean persons born in Marquez, as opposed to those residing in Marquez when the land grant was organized. [MIO 26]

{18} Initially, we note that the district court's summary judgment in this case accurately pointed out that the final judgment in a suit initiated in 1969 incorporated a finding that the original Juan Tafoya Land Grant was partitioned "to residents and owners and proprietors of land in that certain community then known as Juan Tafoya and thereafter known as the Town of Marquez." [RP 680-81, 1031] That judgment also included a finding that those persons "residing in said area organized themselves into a governing entity purporting to govern themselves . . . as a Community Land Grant." [RP 681] It thus appears that a valid final judgment of a district court long ago declared that the original members of the Juan Tafoya Land Grant were the "residents and owners and proprietors of land in [Marquez]" and that the grant was organized by those "residing in said area." [Id.]

{19} More importantly, subsequent litigation generated and incorporated into a final judgment a list of members of the grant along with a list of the heirs of those people. *Marquez*, 1981-NMSC-080, ¶ 12. And the *Marquez* case involved the determination

13

and declaration of the proper method for distributing shares in the Corporation to the persons on those lists. *Id.* ¶¶ 14-15. Thus, even if we assume that a disputed interpretation of the phrase "from Marquez" could constitute a factual dispute preventing summary judgment, rather than a mere legal argument to be resolved by the district court, the dispute at issue, nonetheless, involves only a description of the method used to generate a pair of lists. And those lists, themselves, were before the courts in each of the relevant cases. And—contrary to the Corporation's current contention that the lists contained errors capable of resulting in an improper distribution of corporate shares—those cases resulted in judicial decrees incorporating those lists and, ultimately, approving the method used by the Corporation to distribute shares to the persons on those lists. Thus, regardless of any words used to describe the lists or their compilation, the lists themselves have been the subject of litigation that resulted in valid, final judgments on the merits, including judgments that incorporated the lists themselves. Because we are not persuaded that disagreement regarding the meaning of the phrase "from Marquez" represents a genuinely disputed issue of material fact, we conclude that this issue is not viable and deny the Corporation's motion to amend its docketing statement to assert this issue.

{20}     As the new issues asserted by the Corporation are not viable, we deny the Corporation's motion to amend the docketing statement in its entirety, and, for the

14

foregoing reasons, as well as those articulated in the notice of proposed summary disposition, we affirm the summary judgment of the district court in its entirety.

{21}    **IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

_____

**TIMOTHY L. GARCIA, Judge**