621 P.2d 1116

HINES CORPORATION, a New Mexico
Corporation, Plaintiff–Appellee,

v.

CITY OF ALBUQUERQUE,
Defendant–Appellee.

E. R. ALLEMAN and Doris Alleman et
al., Plaintiffs–Appellees,

v.

HINES CORPORATION et al.,
Defendants–Appellants.

No. 12720.

Supreme Court of New Mexico.

Oct. 17, 1980.
Rehearing Denied Jan. 13, 1981.

Moses, Dunn, Beckley, Espinosa & Tut-
hill, Thomas J. Dunn, Albuquerque, for de-
fendants–appellants.

William J. Kraemer, Asst. City Atty.,
Bernard Robinson, George F. Stevens,
Wheeler, Poulson & Associates, John C.
Wheeler, Albuquerque, for plaintiffs–appel-
lees.

## OPINION

SOSA, Chief Justice.

This case presents the question of whether six quadraplexes built by the Hines Corporation in the Cherry Hills subdivision of Albuquerque, New Mexico, must be brought into conformance with restrictive covenants allegedly applicable to the land. We decide that they should. The issues we address are:

1. Whether certain restrictive covenants apply to the tract of land upon which defendant Hines built the six quadraplexes?

2. If the covenants apply, does the doctrine of relative hardships prevent their enforcement?

3. Whether the trial court erred in awarding damages to plaintiff Harris?

Defendant Hines was the owner of Tract C, of Unit 1 within the Cherry Hills subdivision. Hines redivided Tract C into smaller tracts. At that time it was believed by Hines that the eastern portion of Tract C was zoned R–2, which would allow him to build quadraplexes on the land. Hines submitted plans and obtained a building permit from the City and began construction of six quadraplexes on the tract. It was later discovered that the land was not zoned R–2, but was zoned R–T, which would allow only single family residences and townhouses to be built. When the mistake was discovered, Hines filed a declaratory action seeking to have the City estopped from enforcing the zoning restriction because it had issued the permit.

The City, Hines, and Associated Investment Company, entered into a stipulated settlement. Associated had a joint venture agreement with Hines, and owned the remainder of Tract C, which had not been subdivided. This remainder was zoned R–2, which would allow high density occupation. The settlement stipulated that Associated would limit the density of its land to about half the allowable limit, that Hines could leave the quadraplexes on his redivided land, and that the City would allow the variance.

Alleman, a homeowner in Cherry Hills, brought suit against Hines, the City, Associated and Cherry Hills Architectural Committee to have the settlement set aside, to enjoin the City from allowing the construction of the quadraplexes, and to have the Architectural Committee enforce the covenants and zoning law applicable to Cherry Hills. The quadraplexes were substantially complete when suit was brought.

Trial was had on Alleman's suit, in which he was joined by several other plaintiffs, also residents of Cherry Hills. The court set aside the stipulated settlement and declaratory judgment and found that protective covenants applied to Tract C and that the covenants were unambiguous. The court also found that there was a zoning violation caused by the non–wilful negligence of defendant Hines. The court mandated the City to enforce its zoning laws, mandated the Committee to enforce the covenants, ordered Hines and Associated to bring the quadraplexes into compliance with the covenants and zoning laws, and awarded damages to plaintiff Harris for the cost of building a fence between his property and the quadraplexes.

The first issue we must decide is whether certain restrictive covenants apply to Tract C of Unit 1. The covenant in question describes Unit 1 and thereafter states in part:

WHEREAS, the undersigned desire to restrict and impose certain protective covenants on the above–described property owned by them;

NOW THEREFORE, there are hereby created and established the following protective covenants for said land, to-wit:

.　　.　　.　　.　　.

All the lots in the subdivision are hereby declared to be single–family residential lots.

The appellants contend that the history of the development of the protective covenants, which were written by Associated, show that Associated never intended Tract C of Unit 1 to be restricted·to single family residential lots. They also contend that the plat is an integral part of the covenants,

and that, if reference is made to the plat, it is clear that the covenant does not apply to Tract C of Unit 1. The plat shows that Tract C has not been subdivided. Appellants argue further that even if it is not clear that Tract C is not burdened by the covenant, then at the very least the covenant should be considered ambiguous. If it is ambiguous, they argue, then the intent of Associated should control.

The appellees argue that a review of the covenant shows no attempt to exclude Tract C from its effect. They also argue that the fact that Tract C has not been subdivided is inconsequential since it can be subdivided in the future. Thus reference to the plat is not instructive.

■ In construing a protective covenant, a court is to give effect to the intention of the parties as shown by the language of the whole instrument, considered with the circumstances surrounding the transaction, and the object of the parties in making the restrictions. *H. J. Griffith Realty Co. v. Hobbs Houses, Inc.*, 68 N.M. 25, 357 P.2d 677 (1960); *Hoover v. Waggoman*, 52 N.M. 371, 199 P.2d 991 (1948). We must also avoid strained constructions, though covenants should be strictly construed. *Montoya v. Barreras*, 81 N.M. 749, 473 P.2d 363 (1970).

■ In this case we believe that the restrictive covenant is unambiguous. The terms of the covenant clearly apply to the whole of Unit 1, and it is undisputed that Tract C is within Unit 1. Reference to the plat shows that Tract C has not yet been divided into small, residential size lots, but this does not prevent the covenant from applying to future development of the land. A consideration of circumstances surrounding the formation of the covenant and the object of the parties leads us to the same result. While it may be that a mistake was made in the drafting of the covenants, the buyers of lots within the subdivision must be able to rely on the expressed intentions of the subdivider. They cannot be expected to guess at the secret intention of the developers. The trial court did not err in finding that the covenant is unambiguous in its application to Tract C of Unit 1.

■ We do not consider whether the city zoning laws must be enforced against the appellants, because the covenants are more stringent than are the zoning laws which appellees seek to have enforced. If zoning laws are less restrictive than applicable covenants, the legal effect of the covenants is generally not abrogated. *Ridge Park Home Owners v. Pena*, 88 N.M. 563, 544 P.2d 278 (1975).

The second issue we consider is whether the doctrine of relative hardships applies to prevent the enforcement of the covenants. The trial court found that the cost of construction of the six quadraplexes to Hines was approximately $380,000.00. The court found that the cost of remodeling the quadraplexes to single family residences would be $316,800.00. It was also found that Hines did not violate the covenants wilfully, but through negligence. Testimony taken at trial indicates that the actual loss to defendants could be great or little, depending on the saleability of the buildings after conversion. The trial court found further that any hardships imposed upon defendants by granting injunctive relief are far outweighed by the benefits to the community affected.

■ In New Mexico, injunctions are granted to prevent irreparable injury for which there is no adequate and complete remedy at law. *Kennedy v. Bond*, 80 N.M. 734, 460 P.2d 809 (1969). An injunction will be granted in the sound discretion of the court. *State v. First Judicial District Court*, 69 N.M. 295, 366 P.2d 143 (1961). The court is allowed to, and in some situations should weigh equities and hardships. *See Gaskin v. Harris*, 82 N.M. 336, 481 P.2d 698 (1971); *State v. First Judicial District Court, supra*. In the present case the hardship suffered by defendants was not clearly ascertainable. Nor was plaintiff's hardship measurable by reasonably certain monetary damages. We therefore cannot say that the court abused its discretion. The court weighed the relative hardships and determined that· relief should be granted to

**314**

plaintiffs, and we do not determine otherwise.

■ The appellants next argue that the trial court erred in awarding damages to plaintiff Harris for the construction of a fence between two lots which he owned and the quadraplexes. We agree. The purpose of the fences was to block view of the quadraplexes. The quadraplexes will be brought into compliance with the covenants. There will no longer be any invasion of Harris' interests. There was no showing of any temporary or permanent loss to Harris caused by the defendants. The trial court is reversed on this issue.

For the foregoing reasons this cause is affirmed in part and reversed as to damages allowed plaintiff Harris and is remanded for the entry of judgment consistent herewith.

IT IS SO ORDERED.

PAYNE and FELTER, JJ., concur.