2001-NMSC-012

21 P.3d 24

AMKCO, LTD., CO., a New Mexico limited liability company, Keeling Petroleum, Inc., a New Mexico corporation, and Keeling Distributing, Inc., a New Mexico corporation, Plaintiffs–Petitioners,

v.

Mickey D. WELBORN, a single man, Defendant–Respondent.

No. 25,820.

Supreme Court of New Mexico.

March 22, 2001.

Shoobridge Law Firm, P.C., William G.W. Shoobridge, Hobbs, NM, for Petitioners.

Templeman & Crutchfield, James E. Templeman, Lovington, NM, for Respondent.

## OPINION

FRANCHINI, Justice.

{1} Petitioners Amkco, Ltd., Keeling Petroleum, Inc., and Keeling Distributing, Inc., appeal from a Court of Appeals' opinion requiring Petitioners to remove a portion of a gas station that was constructed on a fifty-eight foot strip of land belonging to Respondent Welborn. In so doing, the Court of Appeals reversed the trial court's application of the relative hardship doctrine. We now reverse the Court of Appeals and remand to the trial court to allow Respondent to choose one of three remedies.

## FACTS AND PROCEDURE

{2} Petitioners are entities controlled by Keeling, a fuel distributor in Hobbs, New Mexico. On May 10, 1988, Petitioners acquired a rectangular plot of land measuring 330 by 660 feet on which they planned to build a truck stop or convenience center. After determining that they would only need a 220 by 330 foot tract of land upon which to build the truck stop, Petitioners sold the remainder of the original plot of land to Respondent Welborn for $37,500. As part of the sale, Richard Pettigrew, a professional surveyor, conducted a boundary survey of the two tracts. That survey revealed that a 220 by fifty-eight foot strip of land retained by Petitioners was subject to a highway right-of-way easement. Apparently, although Petitioners received a copy of the Pettigrew survey, they did not notice the easement. Thus, when Petitioners retained the 220 by 330 foot parcel of land, only a 220 by 278 foot area of that parcel was available for development.

{3} In 1993, as Petitioners prepared to build what would be a Conoco Travel Center, they requested a site plan of the project from Ken Hovey Design Group and a survey from John West Engineering. Ignorant of the fact that a 220 by fifty-eight foot strip of Petitioners' property was occupied by the highway easement, the surveyors mistakenly assumed that the southern edge of the highway represented the northern boundary of the property. Both the site plan and the survey positioned Petitioners' plot fifty-eight feet south of its actual boundaries, resulting in a fifty-eight foot encroachment onto Respondent's land.

{4} Neither Petitioners nor Respondent detected the encroachment until after the travel station was completed. In order to obtain financing for the $1,250,000 project, Petitioners requested another survey in 1997. That survey revealed the fifty-eight foot encroachment onto Respondent's land. The fifty-eight by 220 foot encroachment represents

roughly nine percent of Respondent's total plot.

{5} After learning of the encroachment, Petitioners immediately notified Respondent. Petitioners have since offered to purchase the strip of land for $14,700, which, according to a certified appraiser, represents the value of the encroached property. Alternatively, Petitioners purchased a strip of land measuring fifty-eight by 330 feet located adjacent to, and with the same frontage as, Respondent's property, and offered to exchange this tract of land for the smaller parcel of encroached property. Respondent declined both offers.

{6} Having failed to resolve the issue out of court, Petitioners sought a declaratory judgment defining the rights of the parties and requiring Respondent to convey the land for its reasonable value or imposing alternative equitable relief. Respondent filed a counterclaim for ejectment and asked that the court quiet title to his property. Following a bench trial, the trial court ruled in favor of Petitioners, concluding that ejecting Petitioners from the land would cause "irreparable, unconscionable damage" while the existing encroachment only causes Respondent "nominal damage." Accordingly, the trial court ordered Respondent to convey the strip of land in question to Petitioners in exchange for its fair market value or the replacement plot. In support of its ruling, the court found, among other things, that: (1) the Petitioners' encroached onto Respondent's land "unknowingly" and "in good faith reliance" on a survey; (2) Respondent did not notice the encroachment despite the fact that he witnessed the construction on his land; (3) the encroachment occurred as a result of a "mutually mistaken state of mind" by the parties; (4) the cost of removal of the encroachment would be disproportionate to the damage sustained by Respondent's property and would be unconscionable in light of the unintentional nature of the encroachment and the enormous cost of removal; and (5) while Respondent's property rights are not irreparably injured by the encroachment, removal of the encroachment would irreparably injure Petitioners, rendering the travel station unviable.

{7} Respondent appealed the trial court's ruling. The Court of Appeals reversed, holding that because the encroachment was "significant," the trial court abused its discretion in ordering Respondent to convey the encroached upon land and erred in refusing to grant an injunction requiring the removal of the structure. *See Amkco, Ltd. v. Welborn,* 1999–NMCA–108, ¶ 24, 127 N.M. 587, 985 P.2d 757. The Court also reversed the trial court's finding that the encroachment resulted from a mutually mistaken state of mind between both parties. *See id.* ¶ 26. On appeal, Petitioners argue that the Court of Appeals improperly refrained from applying the "relative hardship doctrine," which demands that a court determine whether the equities and costs facing each party warrant removal of the encroachment or some other equitable remedy.

## THE DOCTRINES OF IRREPARABLE HARM AND RELATIVE HARDSHIP

{8} We review a trial court's decision to grant or deny equitable relief for abuse of discretion. *See Navajo Academy, Inc. v. Navajo United Methodist Mission Sch., Inc.,* 109 N.M. 324, 330, 785 P.2d 235, 241 (1990). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Woodward,* 121 N.M. 1, 4, 908 P.2d 231, 234 (1995).

{9} Encroachments such as the one presently in question often result in the issuance of an injunction ordering its removal. *See Heaton v. Miller,* 74 N.M. 148, 154, 391 P.2d 653, 657 (1964). Injunctive relief is an extraordinary remedy that is not a matter of right, but which rests in the sound discretion of the trial court, to be exercised according to the facts and circumstances of each case. *See Hobbs v. Town of Hot Springs,* 44 N.M. 592, 595, 106 P.2d 856, 858 (1940). When an encroachment occurs by accident, the issuance of an injunction requiring removal of the encroaching structure has traditionally depended on the application of two doctrines. Under the "irreparable harm rule," an injunction to remove a structure issues only

when the injury suffered by the plaintiff cannot be repaired by legal remedy. *See Hines Corp. v. City of Albuquerque*, 95 N.M. 311, 313, 621 P.2d 1116, 1118 (1980) (noting that "injunctions are granted to prevent irreparable injury for which there is no adequate and complete remedy at law"); *Kennedy v. Bond*, 80 N.M. 734, 738, 460 P.2d 809, 813 (1969); *Heaton*, 74 N.M. at 154, 391 P.2d at 657 (holding that in a suit for ejectment, "[t]he usual theory upon which the injunction is granted is the inadequacy of the remedy at law"); *see generally* 1 Dan B. Dobbs, *Law of Remedies* § 2.5(2) (2d ed.1993) (describing the factors courts have considered in determining whether legal remedies are adequate and discussing the application of those factors in various types of cases). Under the "relative hardship" or "balancing of equities" doctrine, the decision to remove the encroachment depends on a balancing of the hardships that removal or failure to remove would inflict on each party. *See Hines Corp.*, 95 N.M. at 313, 621 P.2d at 1118 ("The court is allowed to, and in some situations should weigh equities and hardships."); *Sproles v. McDonald*, 70 N.M. 168, 174–76, 372 P.2d 122, 126–28 (1962) (applying the balancing of equities doctrine); *see generally* Dobbs, *supra*, § 5.10(4) (describing the factors and policies courts have considered when applying the relative hardship doctrine). While these doctrines are not in direct opposition, our cases have not defined the relationship between them. *Compare Kennedy*, 80 N.M. at 738, 460 P.2d at 813 (applying the irreparable harm doctrine but not balancing the relative hardships) *with Sproles*, 70 N.M. at 174–76, 372 P.2d at 126–28 (applying the relative hardship doctrine but not engaging in an irreparable harm analysis). Even cases invoking both doctrines fail to explain the relationship between the two or what result would stem from a case in which the plaintiff satisfies one but not the other doctrine. *See, e.g., Hines Corp.*, 95 N.M. at 311, 621 P.2d at 1118.

▮ {10} We conclude that state law prescribes a two-part test to determine the propriety of injunctive relief for encroachments. The first part of the test is a threshold question. The party seeking the injunction must show that it will suffer irreparable harm if the court denies injunctive relief. Failing the first part of the test ends the inquiry, and the injunctive relief must be denied. *See State v. City of Sunland Park*, 2000–NMCA–044, ¶ 18, 129 N.M. 151, 3 P.2d 128 (citing *Padilla v. Lawrence*, 101 N.M. 556, 562, 685 P.2d 964, 970 (Ct.App.1984), and *Hill v. Community of Damien of Molokai*, 1996–NMSC–008, ¶ 51, 121 N.M. 353, 911 P.2d 861, for the proposition that injunctions should issue only upon a showing of irreparable injury). However, satisfying the first part of the test does not entitle a party to injunctive relief. If a party successfully proves that irreparable harm will flow from a denial of injunctive relief, then the court proceeds to the second part of the test, balancing the hardships to determine whether the injunction shall issue.

▮ {11} We now determine whether Respondent suffered irreparable harm as a result of Petitioners' encroachment. "It is settled ... that a given piece of property is considered to be unique, and its loss is always an irreparable injury." *United Church of the Medical Center v. Medical Center Commission*, 689 F.2d 693, 701 (7th Cir. 1982); *accord O'Hagan v. United States*, 86 F.3d 776, 783 (8th Cir.1996) (holding that loss of interest in real property is irreparable harm because real property is unique and monetary damages are not adequate compensation for loss); *Bean v. Independent American Sav. Ass'n*, 838 F.2d 739, 743 (5th Cir. 1988) (holding that party who stood to lose interests in real property had proven irreparable harm because real property is presumed unique); *Dixon v. Thatcher*, 103 Nev. 414, 742 P.2d 1029, 1030 (1987) ("[R]eal property and its attributes are considered unique and loss of real property rights generally results in irreparable harm."). The encroachment in this case deprived Respondent of all use of a portion of his property. The trial court therefore erred in concluding that Respondent's "property rights will not be irreparably injured by the denial of an order to remove the existing encroachments." We hold that Respondent proved irreparable harm, thus satisfying the first part of the test for injunctive relief.

{12} Having determined that Respondent satisfied the threshold test for injunctive relief, we now balance the hardships to determine whether to grant Respondent the injunctive relief he seeks. In *Sproles*, this Court faced a factual scenario roughly similar to the one presently in question. A couple discovered that one of the fences bordering their property had been misplaced and that the fence and other improvements made by the neighbor encroached upon their land. *See Sproles*, 70 N.M. at 169–70, 372 P.2d at 126–28. The trial court ordered that portions of the encroachment be removed. *See id.* at 170, 372 P.2d at 124. On appeal, this Court considered the size and quality of the encroached upon land, as well as the longevity of the encroachment, and determined that the trial court committed reversible error in failing to apply the relative hardship doctrine. *See id.* at 174–76, 372 P.2d at 126–28. The Court held that "the trial court should have weighed the relative hardship likely to result to [plaintiff] through granting the relief as compared with the burden to [defendants] in the event the relief was denied." *Id.* at 175, 372 P.2d at 127.

{13} Two years after *Sproles*, this Court decided *Heaton*. *Heaton* honed the relative hardship doctrine by emphasizing that it applies only when the encroachment has been committed by a party unaware of the true boundary line. *See Heaton*, 74 N.M. at 156–59, 391 P.2d at 658–60; *see also* Dobbs, *supra*, § 5.10(4). Accordingly, the *Heaton* Court refused to apply the relative hardship doctrine because the encroacher in that case knew that a dispute existed as to the boundary line. *See Heaton*, 74 N.M. at 156–59, 391 P.2d at 658–60. In the present case, the Court of Appeals overruled the trial court's finding that the encroachment resulted from a mutually mistaken state of mind between Petitioners and Respondent. As illustrated by *Heaton*, however, the relative hardship doctrine applies to innocent encroachments; the encroachment need not be the product of mutual mistake. The issue of mutual mistake is therefore inapposite to our inquiry. Here the trial court, apart from finding mutual mistake, found that Petitioners encroached upon Respondent's land "unknowingly" and "in good faith." The Court of

Appeals did not disturb these findings and neither do we. Because Petitioners encroached innocently, they satisfied *Heaton*'s prerequisite to the application of the relative hardship doctrine.

{14} In determining the propriety of the trial court's decision to refuse to order removal of Petitioners' encroaching structure, the Court of Appeals noted that some cases from other jurisdictions denied ejectment only when the encroachment was insubstantial, such as an encroachment that "projected a few inches on the land of another." *Amkco*, 1999–NMCA–108, ¶ 21, 127 N.M. 587, 985 P.2d 757 (citing *Tyree v. Gosa*, 11 Wash.2d 572, 119 P.2d 926, 930 (1941)). The Court of Appeals embraced this focus on the size of the encroachment in relation to the Respondent's remaining land and held: "Here, the fifty-eight-foot encroachment amounted to approximately nine percent of [Respondent's] remaining useable land. Under these circumstances, the encroachment cannot be considered minimal or de minimis in nature. We have found no authority supporting the compelled conveyance of such a substantial portion of land." *Id.*

{15} The de minimis rule is an old legal maxim holding that equity will not involve itself in mere trifles. *See, e.g., Snider v. Town of Silver City*, 56 N.M. 603, 615, 247 P.2d 178, 186 (1952). In holding that an encroachment that is not minimal but substantial in size must, as a matter of law, be cured by ejectment, the Court of Appeals inverted the de minimis rule and employed it as a threshold bar to the trial court's use of the relative hardship doctrine. No New Mexico authority supports this use of the de minimis rule to preclude application of the relative hardship doctrine. In fact, in *Sproles*, the Court remanded the case for application of the relative hardship doctrine despite the fact that the 420 foot encroachment in that case was clearly not minimal in nature. *See Sproles*, 70 N.M. at 174–76, 372 P.2d at 126–28. In determining that the relative hardship doctrine applied, the *Sproles* Court considered not only the size of the encroachment, but the quality of the land encroached upon and the nature of its use. *See id.* We therefore reverse the Court of Appeals' hold-

ing that the size of the encroachment compels its removal.

{16} Similarly, while the size of the encroachment provides an important factor when balancing the hardships, it does not comprise the entire inquiry. *See* Dobbs, *supra*, § 5.10(4) ("[The] disparity in economic consequences would be a significant factor in determining whether to issue the injunction"). Indeed, it would be a stifled understanding of "hardship" that took into consideration only the area of land affected, but not the value of the land to the affected party. Thus, an encroachment of only a few inches may provoke extreme hardship to an owner who shows that the section of encroached upon land is of tremendous economic or personal value. Conversely, an encroachment of many feet may not result in significant hardship to an owner who derives no use or value from the land other than its market price.

{17} Other than the fact that the encroachment encompasses 9.19175 percent of his vacant land, Respondent has offered no evidence that he has suffered hardship. Petitioners, on the other hand, would suffer the harm of losing the $188,837 cost of improvements made on the land plus $107,687 annually as a result of no longer being able to provide diesel fuel. As the trial court determined, the $1,250,000 project would be rendered unviable. Under these circumstances, we hold that the trial court did not abuse its discretion in determining that the relative hardships favored denying Respondent's request for ejectment.

## REMEDIES

{18} Having determined that the trial court properly refused to order the removal of the encroaching structure, we now examine the trial court's efforts to remedy the encroachment. We have not yet had the opportunity to address the proper remedy for an encroachment when the relative hardship doctrine necessitates a remedy other than removal. Here, the trial court ordered the forced conveyance of the strip of land in exchange for the fair market value of the property or title to the replacement strip of property offered by Petitioners. We recognize that forcing Respondent to convey the land imposes a significant burden on Respondent, and we are aware that the money exchanged for that conveyance will not fully compensate Respondent for the loss he suffered as a result of the encroachment. Consequently, in reviewing the remedies available to Respondent, we ensure that the trial court made every attempt to fashion remedies that come closest to making Respondent whole.

{19} Typically, when the relative hardship doctrine precludes removal of the encroachment, the encroaching party acquires either title or an easement in the land and pays damages accordingly. *See* Dobbs, *supra*, § 5.10(4). Some courts have adopted a preference for remedying the encroachment with an easement on the grounds that "the affirmative relief granted should not be greater than is reasonably necessary to protect [the encroaching party]." *Christensen v. Tucker*, 114 Cal.App.2d 554, 250 P.2d 660, 665 (1952); *see also Zerr v. Heceta Lodge No. 111, Independent Order of Odd Fellows*, 269 Or. 174, 523 P.2d 1018, 1024–25 (1974) (limiting an encroacher's interest in the disputed land to an easement so that [the encroached upon party] can recover possession of the land in the event that the structure is removed in the future). In this case, such an easement would prevent the tremendous hardship that removal of the diesel island would inflict upon Petitioners, while allowing Respondent to retain title to the strip of land. We hold that the trial court erred in failing to include an easement among the remedies available to Respondent. Upon remand, Respondent may elect a remedy from among the following three: easement, conveyance of title to the land in question in exchange for its fair market value, or conveyance of title in return for the replacement plot of land currently owned by Petitioners. We note that the trial court valued a deed to the land at $14,700. That value was undisputed at the trial court and remains so here. Accordingly, if the Respondent elects the remedy of an easement, the value of that easement may not exceed $14,700.

{20} Finally, we address the Court of Appeals' reversal of the trial court's $3,600.03 award of costs to the Petitioner.

*See Amkco,* 1999–NMCA–108, ¶ 29, 127 N.M. 587, 985 P.2d 757. Although we have refused to order Petitioners to remove their encroachment from Respondent's land, we have also recognized that the encroachment has caused Respondent, through no fault of his own, to suffer an irreparable injury. Under these circumstances, forcing Respondent to shoulder the costs of Petitioners' lawsuit against him would result in a severe injustice. We therefore affirm the Court of Appeals on the issue of trial costs. *See Marchman v. NCNB Texas National Bank,* 120 N.M. 74, 94, 898 P.2d 709, 724 (1995) (quoting *Gallegos ex rel. Gallegos v. Southwest Community Health Servs.,* 117 N.M. 481, 490, 872 P.2d 899, 908 (Ct.App.1994), for the proposition that a losing party may overcome the presumption that the prevailing party is entitled to costs if there is a showing that such an award would be unjust).

## CONCLUSION

{21} With respect to the relative hardship doctrine, we reverse the Court of Appeals and affirm the trial court. On the issue of trial costs, we affirm the Court of Appeals. We also hold each party responsible for its own appellate costs. We remand the case to the trial court to allow Respondent to choose one of the three remedies discussed herein.

{22} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, Chief Justice, JOSEPH F. BACA, Justice, PAMELA B. MINZNER, Justice, PETRA JIMENEZ MAES, Justice.