This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**GRETCHEN NUNN,**

    Plaintiff-Appellee,

v.                          **No. 29,132**

**KATHLEEN NUNN,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ted Baca, District Judge**

Rocha de Gandara Law Firm
Jane Rocha de Gandara
Los Lunas, NM

for Appellee

James C. Ellis, P.C.
Lance Himmelberger
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

After a bench trial, the district court awarded an equitable lien of $40,000 against a landlord for her tenants' costs of installing a pool and some tiling to the rental property during their tenancy. The district court also declined to enforce a rental agreement between the parties. We reverse the award of the equitable lien and affirm the finding that the contract was not enforceable.

## I.  BACKGROUND

In 1998 Kathleen Nunn (Mother) received an inheritance. Her accountant advised her that it might be beneficial for her to invest some of this inheritance in a rental property. Mother was not interested in being a landlord, but decided that she would be willing to buy a house if she could rent it to family members.

Mother's son, Reid Nunn (Son), and his wife, Gretchen Nunn (Wife) agreed to this arrangement. Wife testified that the arrangement would allow them to sell their first home in a better market. Son testified that the arrangement would allow him to live closer to his job, family, and friends. Son and Wife identified a house that they would like to live in, and Mother used $40,000 of her inheritance as a down payment to purchase the house. Mother took out a $130,000 mortgage on the property. Mother was the sole owner of title to the property.

In 1998 Son and Wife moved out of their existing house and into Mother's new property. Son and Wife began paying $950 per month in rent to Mother. At all times

Mother paid the mortgage, utilities, and property taxes on the property, reported rental income, and took deductions for maintenance on her income taxes.

During the time that Son and Wife lived in the rental house, they made numerous improvements. Although most were modest, two stand out. In 2000 the couple spent $7,191 replacing tile throughout the house. They had not obtained permission from Mother prior to installing the tile. In 2001 the couple spent $29,766 installing a pool at the house. Son testified that he asked for permission to install the pool, which Mother initially denied. Son then testified that Mother eventually acquiesced on the condition that she would not pay for the repairs, maintenance, or anything associated with the pool.

In 2003 Mother desired to refinance her mortgage on the rental property. As part of this process, the lender required a current copy of her rental agreement with Son and Wife. Mother obtained a rental agreement from an office supply store, which Son executed on behalf of Son and Wife in front of two witnesses. The rental agreement provided that, in the event of a lawsuit, the prevailing party could recover attorney fees.

In October 2006 Son moved out of the rental house. Then, in November, Son filed for divorce. Shortly thereafter, on November 21, 2006, a termination of rental agreement was delivered to Son and Wife. When Wife did not vacate the property,

3

Mother filed an eviction action in metropolitan court. That petition was dismissed without prejudice when Wife filed the instant lawsuit in district court. After a short bench trial, the district court awarded an equitable lien in favor of Wife and Son against Mother in the approximate amount of the costs to Wife and Son of installing the pool and the tile. The district court found that no initial written rental agreement had been executed. The court further ordered that "[t]here was not a typical landlord-tenant relationship between the parties, and therefore the [r]ental [a]greement executed by [Son] is not enforceable." **[RP 178]**

## II. DISCUSSION

Mother argues (1) that the district court erred in granting an equitable lien, and (2) that the district court erred in not enforcing the rental agreement, an issue that might allow her to obtain attorney fees if this Court reverses. We address each argument in turn.

We note that our task is made more difficult because Wife did not file an answer brief in this appeal. However, our rules do not require that an answer brief be filed, as we may affirm on any ground. *See Lozano v. GTE Lenkurt, Inc.*, 1996-NMCA-074, ¶ 30, 122 N.M. 103, 920 P.2d 1057. Accordingly, we address each issue on the merits.

### A. The Equitable Lien

4

Mother first argues that the district court erred in granting an equitable lien of $40,000 against her property. Mother contends that the equitable lien must be based on unjust enrichment, but that the district court failed to find unjust enrichment. Mother specifically argues that there was no unjust enrichment because (1) Wife did not prove that Mother was enriched, (2) any enrichment was not unjust, and (3) the court applied an incorrect measure of damages in calculating the amount of the lien. Points one and three are closely related. Although Mother would appear to be correct on all counts, we need not address the argument that any benefit was not unjust, as we resolve this case on Wife's failure to show any benefit to Mother.

New Mexico recognizes two types of equitable liens: one based on agreement, and the other "constituting a 'remedial device, used to enforce a right to restitution in order to prevent unjust enrichment.'" *Arena Res., Inc. v. OBO, Inc.*, 2010-NMCA-061, ¶ 15, 148 N.M. 483, 238 P.3d 357 (citation omitted). Because the district court determined that no agreement existed at the time the improvements were made, the equitable lien in this case must find its support, if any, in unjust enrichment.

Unjust enrichment occurs when "(1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, ¶ 11, 129 N.M. 200, 3 P.3d 695. To recover in unjust enrichment, a plaintiff must prove that a

5

benefit was received by the defendant. *See Toltec Int'l, Inc. v. Vill. of Ruidoso*, 95 N.M. 82, 84, 619 P.2d 186, 188 (1980). The measure of the benefit is "the reasonable value [cost of the improvements] or to the amount which [the] improvements have added to the market value of the land, whichever is smaller." *Cano v. Lovato*, 105 N.M. 522, 537, 734 P.2d 762, 777 (Ct. App. 1986) (internal quotation marks and citation omitted).

Restitution for unjust enrichment is an equitable remedy. *See Arena Res.*, 2010-NMCA-061, ¶ 15. "We review a [district] court's decision to grant or deny equitable relief for abuse of discretion." *Amkco, Ltd. v. Welborn*, 2001-NMSC-012, ¶ 8, 130 N.M. 155, 21 P.3d 24. A court abuses its discretion "when it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Klinksiek v. Klinksiek*, 2005-NMCA-008, ¶ 4, 136 N.M. 693, 104 P.3d 559 (internal quotation marks and citation omitted).

If the market value of the property did not increase, there is no benefit. For example, in *Toltec Int'l*, the finance director of the Village of Ruidoso arranged for a company to install a metal tower at a race track. 95 N.M. at 83, 619 P.2d at 187. The tower was installed but the village, which had not authorized the director to make the purchase, refused to pay. *Id.* The district court ordered the village to pay under a theory of unjust enrichment. *Id.* at 83-84, 619 P.2d at 187-88. *Toltec Int'l* had

argued that the village benefitted from increased tourism from the use of the tower at mule races and because the tower could be used at the village's airport. *Id.* at 84, 619 P.2d at 188. The Court noted that the record contained no evidence that the tower had increased tourism by attracting people to the race track or that the tower had been used at the town's airport. *Id.* Accordingly, there was no proof that the village had received a benefit, and the Court reversed the district court and ordered the complaint dismissed. *Id.*

When benefits are proved, the cost of improvements serves as a limitation on restitution. In *Cano*, an improver purchased property from an estate and began making improvements. However, before the improver closed on the sale, another buyer purchased the same property in a tax proceeding. In the resulting suit to quiet title, the district court awarded an equitable lien against buyer in favor of improver in the amount of $37,500, which reflected the fair market value of the improvements. 105 N.M. at 537, 734 P.2d at 777. However, the record showed that the cost of those improvements was only $23,322.56. *Id.* On appeal, this Court reduced the lien to the lower amount of the cost of the improvements, observing that "the owner is not unjustly enriched more than the improver's cost." *Id.* (internal quotation marks and citation omitted).

Here, Wife put on no evidence showing that Mother was enriched. As in *Toltec Int'l*, Wife showed, and Mother did not contest, that tile and a pool had been installed. However, also like *Toltec Int'l*, Wife did not provide evidence that these improvements in any way benefitted Mother. Instead, the district court seemed to simply assume that replacing existing flooring with tile and adding a pool would automatically provide a benefit. This is contrary to the result in *Toltec Int'l*, which implicitly held that the mere possession of the tower by the village was not conclusive as to whether the village enjoyed any benefit. Instead, proof of the benefit is required. Worse, here, the district court appears to have valued that benefit at slightly above the cost to Wife of adding the tile and the pool. However, *Cano* informs us that cost is not a measure of benefit, but instead a limit on recovery.

Wife made no effort to prove the benefit to Mother, if any, of the tile and pool. Despite this, the district court awarded the community a lien that exceeded the cost of the additions. But an equitable lien intended to prevent unjust enrichment must relate to the increase in market value of the property due to the tile and pool, limited by the cost of the tile and pool if that amount were less. By imposing the lien in the absence of proof, and by using an improper standard to measure benefit, the district court abused its discretion.

**B.     The Rental Agreement**

8

The district court found the rental agreement to be unenforceable because "[t]here was not a typical landlord-tenant relationship between the parties." Mother argues that this finding was error. Mother acknowledges that the rental agreement has no bearing on who should bear the cost for the pool and the tile since those improvements were made prior to the agreement. Instead, Mother hopes to enforce a provision of the agreement allowing the prevailing party to obtain attorney fees.

There was little discussion of this issue at trial. The court stated only that

> those rental agreements were not executed for the purposes of establishing any legal relationship or identity between the parties. In other words, they were not executed to establish a landlord/tenant relationship necessarily. They [were] executed to satisfy the requirements of some lending institution; therefore, [their use in] establishing the relationship between the parties is somewhat diminished.

Taken together, we read these statements not as a finding that the agreement exists but is unenforceable, but as a finding that the agreement is unenforceable because no contract exists.

Mother quotes *Garcia v. Middle Rio Grande Conservancy District*, 99 N.M. 802, 807, 664 P.2d 1000, 1005 (Ct. App. 1983), *overruled on other grounds by Montoya v. Akal Sec., Inc.*, 114 N.M. 354, 838 P.2d 971 (1992), for the proposition that we should review de novo whether a contract exists. However, a more complete quote from *Garcia* reveals a more deferential standard:

9

In order to establish a binding contractual agreement, plaintiff must prove a meeting of the minds was arrived at between the parties or that a mutual agreement was objectively manifested by each party. . . . The existence of a contract between parties is generally a question of law to be decided by the trial court. However, when the existence of a contract is at issue and the evidence is conflicting or permits more than one inference, it is for the finder of fact to determine whether the contract did in fact exist.

*Id.* (citations omitted). Accordingly, the district court's finding is a factual issue that we review for substantial evidence. *See Skeen v. Boyles*, 2009-NMCA-080, ¶ 17, 146 N.M. 627, 213 P.3d 531. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Salazar v. D.W.B.H., Inc.*, 2008-NMSC-054, ¶ 6, 144 N.M. 828, 192 P.3d 1205 (internal quotation marks and citation omitted).

Conflicting evidence was presented at trial. Mother produced the rental agreement, which was signed by herself, Son, and two witnesses. But Mother and Son both testified that the entire purpose of that agreement was to satisfy her lender's need for documentation. Both also indicated that the agreement she produced at trial was identical to an earlier agreement. However, Mother did not produce an earlier agreement at trial, and the district court found that no such agreement existed. On these facts, a reasonable mind could conclude—as the district court did—that the contract was intended only to satisfy the lender and was not intended to create an

actual new rental agreement between the parties.  Accordingly, we affirm the district court, and we would have done so even had it reached the opposite result.

# III.  CONCLUSION

For the foregoing reasons, we reverse the district court's award of the equitable lien and affirm its decision not to enforce the rental agreement.

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**MICHAEL E. VIGIL, Judge**