This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**SCOTT STRAUMANN,**

     Plaintiff-Appellee,

v.                                         **NO. 34,026**

**KRIS MASSEY, TAMIE MASSEY,**
**KRIS RICHEY, ANDREA JOSEPH,**
**JILL RICHEY, PAM KELLY, and**
**VICTOR ARRIETA,**

     Defendants-Appellants,

and

**STEFAN A. LONG and MARY O. LONG,**

     Intervenors-Appellees,

and

**ROBERT JIMERSON and PAULA JIMERSON,**

     Intervenors-Appellants.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Darren M. Kugler, District Judge**

Kenneth L. Beal, P.C.

Kenneth L. Beal

Las Cruces, NM

for Appellee

Holt Mynatt Martinez P.C.

Casey B. Fitch

Las Cruces, NM

for Appellants

Barncastle Law Firm

Samantha R. Barncastle

Las Cruces, NM

for Intervenors-Appellees

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

{1}    In this dispute concerning the use of an irrigation easement, the district court found that there was no historic practice of using the easement for a ditch. It nevertheless ordered that a fence that encroached within the easement be removed because it interfered with the use of the easement. We conclude that the district court abused its discretion and reverse the district court's injunction to the extent that it requires the removal of the fence and remand for further proceedings as necessary. We otherwise affirm the district court's judgment.

**FACTS**

2

{2}    A single owner held the 14.152-acre tract of land involved in this case until 1977 when he began to divide and sell parcels of it. He first sold three parcels to separate purchasers. The deeds stated that they were "SUBJECT to . . . a 5 foot wide irrigation ditch easement south of an[d] adjacent to the north property line." The original 14.152-acre tract was bordered on the east by a concrete, community ditch that conveyed surface water from the Elephant Butte Irrigation District to individual farmers, and the apparent intent of the easement was to provide the divided parcels access to water from the community ditch. By 2006, the three parcels were divided into the present six lots. The deeds creating the six lots all contain the same reservation as contained in the first three deeds.

{3}    Plaintiff Scott Straumann owns one of the six lots, located at the northwest portion of the original 14.152-acre tract (Straumann Lot 2). He also owns a lot that is located to the north of the 14.152-acre tract but which is not part of the 14.152-acre tract (Straumann Lot 1). Defendants Kris and Tamie Massey own the lot located in the eastern portion of the 14.152-acre tract, Defendants Kris Richey, Andrea Joseph, Jill Richey, and Pam Kelly own the lot (Richey lot) immediately to the west of the Massey lot, and Defendant Victor Arrieta owns the lot immediately to the northwest of the Richey lot. Intervenors Robert and Paula Jimerson own the lot directly south of the

Arrieta lot and west of the Richey lot. Intervenors Stefan A. and Mary O. Long own the lot directly south of Straumann Lot 2 and west of the Jimerson lot.

{4}    The district court received in evidence Exhibit 13 that depicts the lot configurations and locations (see Exhibit 13 at page 18 of this opinion). All easements are five feet in width.

{5}    Straumann placed berms at locations on Defendants' lots to divert water, but he never constructed a ditch in the five-foot easement. The district court found that, historically, there was no practice of "creating or using an earthen ditch along the disputed boundary lines or within the five foot express easement." There are remnants of an earthen ditch on the northern property line of Straumann Lot 1, along a ditch easement on that lot to provide water to the west side of that lot and the adjoining property.

{6}    Straumann acquired Straumann Lot 2 in 1992. He allowed his horses and cows to graze on the entire 14.152-acre tract with the permission of the owners of the other lots at the time. The Jimersons acquired their lot in 2005, and Arrieta acquired his lot in 2007. The Richey and the Massey lots were purchased in 2010. In November 2010, Defendants Kris and Tamie Massey, Kris Richey, Andrea Joseph, Jill Richey, and Pam Kelly began erecting a pipe fence along the northern border of the Massey and Richey lots in order to curtail trespassing by Straumann and his livestock. Defendants

4

thereafter used their lots to corral and pasture horses. It is undisputed that the fence encroaches upon the easement, and the district court found that it "interferes with [Straumann's] ability to erect, maintain and utilize" the easement.

**DISTRICT COURT PROCEEDINGS**

{7} Straumann filed his original complaint requesting judicial recognition of his historic mechanical maintenance of the ditch and an injunction requiring the removal of the fence and enjoining interference with the historic ditch, as well as damages and attorney fees and costs. After a hearing, the district court ordered Defendants to post a bond of $7500 "to preserve this matter for trial" or remove the fence. The court further ordered that Straumann join Arrieta as a necessary party to the lawsuit.

{8} Straumann filed an amended complaint, additionally requesting judicial recognition of his right to utilize the easement for an irrigation ditch. Defendants filed an answer and counterclaim. In their counterclaim, they requested a declaratory judgment as to the rights and usage of the ditch, as well as damages for malicious abuse of process.

{9} The Longs intervened and filed an answer and complaint that requested relief similar to that of Straumann. The parties filed answers and responses to the other parties' pleadings as appropriate. The Longs and Defendants filed motions for partial summary judgment. The Jimersons joined in Defendants' motion. The district court

granted the Longs' motion in part, determining that there was no genuine issue of material fact and that the Longs and Straumann were entitled to judgment as a matter of law that (1) "an express five foot irrigation ditch easement exists across Defendants' properties" and (2) Defendants interfered with the easement "by erecting the pipe fence along their property line." The court denied Defendants' motion.

{10}     After a bench trial, the district court entered its findings of fact and conclusions of law. In addition to stating the history and facts of the dispute as set forth in the discussion of the facts in this opinion, the court specifically found that Defendants' pipe fence interferes with Straumann's "ability to erect, maintain and utilize the five . . . foot irrigation ditch easement[,]" that the testimony "established no historic practice of creating or using an earthen ditch along the disputed boundary lines or within the five foot express easement[,]" and that "[a]lthough [Straumann] placed berms at various locations on Defendants' properties, a ditch never existed along Defendants' northern border."

{11}     The court's conclusions of law included conclusions that Straumann "is entitled to the creation, use, and maintenance of a dirt ditch along the northern boundary" of Defendants' lots; and that "Defendants' fences interfere with [Straumann's] use of the ditch easement, and therefore, the fences must be removed from within any part of the five foot easement." The court issued a permanent injunction "prohibiting any

structure from being erected within the express five . . . foot easement of any lot except for the purposes of irrigation via an earthen (dirt) or concrete ditch."

{12} Thereafter, Defendants and the Jimersons filed a motion for clarification of the district court's findings of fact and conclusions of law. In their memorandum in support of the motion, they alleged that Straumann intended to "erect either a berm or a portion of a ditch on the five-foot wide easement, . . . create the remaining portion of (or second berm) the ditch on Straumann Lot 1, and . . . seed the ditch and permit his animals to graze on the easement." Defendants and the Jimersons contended that such use was contrary to the district court's ruling and would interfere with their use of the easement. They requested that the district court clarify that any ditch that Straumann created be located within the easement's five-foot width and not on Straumann Lot 1, that the ditch not be seeded or used for grazing, and that Defendants and the Jimersons be permitted to use a charged wire to protect the easement from livestock. Defendants and the Jimersons subsequently filed a motion for reconsideration, requesting the court to reconsider its ruling concerning its denial of damages for malicious prosecution and its ruling concerning the removal of the fence.

{13} The district court held a presentment hearing and a hearing on the motions filed by Defendants and the Jimersons. It entered the judgment proposed by Straumann, corrected for technical errors.

**ISSUES ON APPEAL**

{14}    Defendants raise six issues on appeal, whether: (1) the district court erred by failing to grant them summary judgment; (2) the court erred in ordering them to remove the fence; (3) the court erred in failing to grant them damages on their malicious prosecution claim; (4) the court's judgment does not incorporate its own findings of fact and conclusions of law, lacks specificity, and applies unequally to the parties; (5) the court erred in denying Defendants' motion for clarification; and (6) the court erred in denying Defendants' motion for reconsideration. Issues 2 and 4 permit us to address the merits of Defendants' arguments concerning the district court's injunction. We additionally address Issue 3 because it concerns Defendants' separate claim of malicious prosecution.

**THE DISTRICT COURT'S RELIEF CONCERNING THE EASEMENT**

{15}    The district court declared that Defendants' lots are subject to a five-foot irrigation ditch easement. It issued a permanent injunction enjoining the parties "from erecting any structure or otherwise interfere with the creation, use, repair or maintenance of a dirt or concrete ditch within five . . . feet of the northern boundary" of Defendants' lots. It ordered Defendants to remove "any existing man[-]made obstructions—including the pipe fence—that are within the express irrigation ditch easement" within ninety days of the court's order. There is no dispute concerning the

district court's declaration as to the existence of a five-foot irrigation ditch easement. We thus turn to the district court's determination with respect to its injunction, including the removal of Defendants' encroaching fence.

**{16}** "Injunctive relief is an extraordinary remedy that is not a matter of right[.]" *Amkco, Ltd. v. Welborn*, 2001-NMSC-012, ¶ 9, 130 N.M. 155, 21 P.3d 24. It requires a court to act within its equitable powers. *Insure N.M., LLC v. McGonigle*, 2000-NMCA-018, ¶ 7, 128 N.M. 611, 995 P.2d 1053. As an equitable remedy, the grant of an injunction lies within the sound discretion of the district court. *Id.* "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted) (citing *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153).

**{17}** In *Amkco*, our Supreme Court addressed the issuance of an injunction for the removal of an encroachment. It noted the applicable "relative hardship" or "balancing of equities" doctrine in which "the decision to remove the encroachment depends on a balancing of the hardships that removal or failure to remove would inflict on each party." *Amkco*, 2001-NMSC-012, ¶ 9. It held that New Mexico required "a two-part test to determine the propriety of injunctive relief for encroachments." *Id.* ¶ 10. As the first part, the Court required that the party seeking the injunction demonstrate that the

9

party will suffer irreparable harm if the injunction is not granted. *Id.* Only if the party could make such showing would the case then proceed to the second part, "balancing the hardships to determine whether the injunction shall issue." *Id.* Our Supreme Court in *Amkco* determined that the party seeking the injunction satisfied the first part of the test by showing that the encroachment deprived the party "of all use of a portion of his property." *Id.* ¶ 11.

{18} Our review of the facts and circumstances of this case as reflected in the district court's findings of fact and conclusions of law and the undisputed evidence indicates significant inconsistencies that suggest Straumann did not establish any irreparable harm from Defendants' encroachment of the easement and that, therefore, the district court abused its discretion in ordering the removal of the existing pipe fence in this case. There is no doubt that the lots in question are subject to a five-foot irrigation easement that runs along their northern property line. The purpose of the easement was to provide water from a community ditch to all of the lots.

{19} Our concern arises from the historical use of the easement, its width, and its ability to serve its purpose. The district court found as fact that, although Straumann placed berms in the easement, the easement was never used for an irrigation ditch. The fact that there was no historical use of the easement for an irrigation ditch is not surprising given the expert witness's opinion that "a five-foot wide earthen or concrete

10

ditch . . . would not deliver water adequately[,] effectively, efficiently, or reasonably to Straumann Lot 2 or the other parcels having access through the easement." Indeed, Straumann conceded that installing a ditch would "consume, at least, 7.5 feet[.]" The district court concluded, however, that the easement is limited to five feet and that Straumann was not entitled to expand the width of the easement. The district court additionally foreclosed any expansion of the ditch onto Straumann Lot 1, expressly concluding that Lot 1 "is not subject to the five foot wide irrigation ditch easement" in that it "is neither benefit[t]ed nor burdened by this easement because it was not part of [the] original 14.125-acre tract[.]"

{20}     Based on these findings of fact, conclusions of law, and evidence, Straumann neither had used nor could use the five-foot easement as an irrigation ditch. Thus, even though the district court additionally found that Defendants erected a pipe fence across the northern part of their lots and that the pipe fence interferes with Straumann's "ability to erect, maintain and utilize" the five-foot irrigation ditch easement, the glaring inconsistency is that the district court did not address any harm that could be caused by such interference. The district court's findings of fact and conclusions of law, therefore, do not support a conclusion that meets the first part of the *Amkco* analysis.

{21} Even if Straumann could demonstrate some irreparable harm from the encroachment and the district court was required to balance the hardships to the parties, the facts and circumstances of this case do not favor the granting of the injunction in this case. The interest Straumann seeks to protect is an irrigation ditch easement that has not been used and that cannot be used. Because the easement is not suitable for its purpose, it is difficult to perceive the benefit to Straumann of an injunction that removes interference with the easement that he cannot use for its intended purpose. For the same reason, it is difficult to perceive the hardship he would encounter if the injunction that would alter the status quo were not entered. Defendants, on the other hand, would arguably suffer hardship in the cost of removing and reconstructing their fence.

{22} When considering both the injury to Straumann and the district court's balancing of the equities in relation to the facts and circumstances of this case, the district court's grant of an injunction requiring the removal of Defendants' fence is contrary to the analysis set forth in *Amkco* and the logical conclusions demanded by the findings of fact and conclusions of law. We therefore conclude that the district court abused its discretion in issuing an injunction to the extent that the injunction prohibits Defendants' fence within the easement and requires Defendants to remove the fence.

{23} The district court's permanent injunction, however, additionally enjoins the prohibition of "any structure from being erected within the express five . . . foot easement of any lot except for the purposes of irrigation via an earthen (dirt) or concrete ditch." Defendants introduced evidence at trial concerning the use of a pipeline along the ditch easement as a means of providing all of the six lots the benefit of the easement. On appeal, they contend that the district court did not properly consider this evidence in its balancing of the equities in addressing injunctive relief. To the extent that the district court's injunction restricts the easement to an earthen or concrete ditch, the injunction appears to be contrary to the undisputed fact that the five-foot easement is insufficient for such use. We address only the injunction as it requires removal of Defendants' fence and do not address alternative approaches for use of the easement. We remand to the district court to consider such issues if necessary.

**MALICIOUS ABUSE OF PROCESS**

{24} Defendants further argue on appeal that the district court erred in denying Defendants damages for malicious abuse of process after Defendants "disproved the *entire* basis" for Straumann's requested declaratory relief. Defendants had filed a counterclaim for malicious abuse of process, alleging that Straumann's primary motive was "to misuse or actively participate in misusing the legal process . . . to

accomplish an illegitimate end[,]" causing them damages and the payment of attorney fees. The district court concluded that there was a lack of proof that Straumann misused the legal process, finding that Defendants "effectively invited litigation by their written initial response to the issue of any interference with the express easement."

{25} Malicious abuse of process entails three elements: "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Durham v. Guest*, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19. As relevant to this case, the second element, misuse of process, can be shown by filing a complaint without probable cause. *Fleetwood Retail Corp. of N.M. v. LeDoux*, 2007-NMSC-047, ¶ 12, 142 N.M. 150, 164 P.3d 31. Such probable cause is a reasonable belief based on known facts or a reasonable investigation that the claim can be established. *Id.* ¶ 13. The existence of probable cause is a question of fact to be determined by the trial court. *Id.* To be actionable, the "lack of probable cause must be manifest." *Id.* (internal quotation marks and citation omitted).

{26} Defendants make two arguments as the basis for their position on appeal: that the letter referred to by the district court was not an element of the claim and that

Defendants have disproved the basis for Straumann's claim. As to the letter, Defendants have neither directed this Court to the letter in the record nor stated its content in their briefing. We are unable to address this argument. *See* Rule 12-318(A)(3) NMRA (requiring the parties to provide citation to the record in support of their appellate arguments).

**{27}** As to disproving Straumann's claim, Defendants state that Straumann obtained the preliminary injunction in this case based on his testimony at the August 3, 2011 hearing in which he misrepresented the facts. In particular, Defendants point to their refutation of Straumann's testimony that he had created a ditch within the easement. We agree with Defendants that, as found by the district court, the evidence at trial did not establish that a ditch was ever created within the easement. This evidence indeed refuted Straumann's claims, as stated in his amended complaint and in his testimony at trial, that he was injured and entitled to relief, including damages, because Defendants' fence precluded him from preparing for and planting alfalfa. Moreover, the district court expressly found that Straumann "failed to prove his alleged practice of using . . . a border disc pulled by a tractor to create an earthen ditch is reasonable[.]"

**{28}** Our focus with respect to a malicious abuse of process claim, however, is whether probable cause supports the decision made. *Fleetwood*, 2007-NMSC-047,

¶ 21 ("[L]ack of probable cause is not a claim-by-claim inquiry, but, rather, is determined as to the lawsuit in its entirety[.]"). Although Defendants were able to disprove aspects of Straumann's original allegations, they do not point to evidence addressing Straumann's probable cause to initiate the action. Indeed, at least in part based on the undisputed existence of the easement, the district court granted Straumann the relief he requested. Defendants have not demonstrated a manifest lack of probable cause in order to justify damages for malicious abuse of process.

**CONCLUSION**

{29}    We affirm the district court's judgment declaring the existence of a ditch easement along the northern boundaries of Defendants' lots and the district court's denial of damages to Defendants for malicious abuse of process. We reverse the district court's injunction requiring Defendants to remove their existing fence from the easement and remand for further proceedings as may be necessary and consistent with this opinion.

{30}    **IT IS SO ORDERED.**

 

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**


_____

**JONATHAN B. SUTIN, Judge**

17

